*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 06a0046p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

RICK TODD,

*Plaintiff-Appellant,*

*v.*

No. 05-3343

CITY OF CINCINNATI,

*Defendant-Appellee.*

>

---

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.
No. 03-00032—Timothy S. Hogan, Magistrate Judge.

Argued: February 2, 2006

Decided and Filed: February 3, 2006

Before: MERRITT, MARTIN, and GILMAN, Circuit Judges.

---

**COUNSEL**

**ARGUED:** Mark Joseph Byrne, JACOBS, KLEINMAN, SEIBEL & McNALLY, Cincinnati, Ohio, for Appellant. William C. Hicks, CITY SOLICITOR'S OFFICE FOR THE CITY OF CINCINNATI, Cincinnati, Ohio, for Appellee. **ON BRIEF:** Mark Joseph Byrne, JACOBS, KLEINMAN, SEIBEL & McNALLY, Cincinnati, Ohio, for Appellant. Augustine Giglio, CITY SOLICITOR'S OFFICE FOR THE CITY OF CINCINNATI, Cincinnati, Ohio, for Appellee.

---

**OPINION**

---

MERRITT, Circuit Judge. This is a factual "disability" case arising under the "being-regarded-as-having-such-an-impairment" provision of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12102(2)(C). The Act prohibits a "covered entity," including a municipality, from discriminating "against a qualified individual with a disability because of the disability of such individual in regard to . . . hiring, advancement . . . and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). The Act defines "disability" in non-obvious ways, including as "a physical or mental impairment that substantially limits . . . the major life activities of such individual," and as "being regarded as having such an impairment" by the employer. § 12102(2).

The plaintiff, Rick Todd, is a former Cincinnati police officer who, in 1992 at age 37, was granted a disability pension due to degenerative disc disease acquired as a result of injuries during his police employment. The single issue before us is whether the District Court erred in granting summary judgment to the defendant City. It found as a matter of law that city police officials did

not "regard" plaintiff as disabled and did not refuse in 1996 to employ him as a firearms instructor because they "regarded" him as disabled. We review this question *de novo* and conclude that there was a material dispute of fact between the plaintiff and the City on this question.

The only question we have before us in this case is a narrow one. It is whether the plaintiff offered material evidence sufficient to overcome summary judgment that police officials denied him the job because they "regarded him as disabled." We do not have before us any question concerning whether he in fact had a "physical . . . impairment that substantially limits . . . major life activities" or a "record of such an impairment" under 42 U.S.C. § 12102(2)(A) and (B). Neither do we have before us the question of whether the plaintiff is an otherwise "qualified individual with a disability" who "can perform the essential functions of the employment position" either "with or without reasonable accommodation" within the meaning of 42 U.S.C. § 12111(8) and (9). No such questions are raised or briefed in this appeal.

On the question of whether the police officials in charge of deciding whether plaintiff should be employed as a firearms instructor "regarded him as disabled," plaintiff offered evidence that two of the police officials in charge of hiring a firearms instructor at the police firing range, Captain Kenneth Jones and Sgt. Douglas Ventre (the two officials who had devised the qualifications for the job) made statements and notes during the interviewing process of candidates for the job that showed that they thought plaintiff should be rejected because of the medical disability for which he was given a disability pension.

Sgt. Ventre in his deposition made many statements that he had serious doubts that plaintiff could "physically do the demanding work" required. Ventre testified that even though the plaintiff explained at length in the interviewing process that he was physically able to do the work, "I still had a doubt" because "how can you go out [on a disability pension] with a back injury and still — then come back now and say you can pick something up that was, you know, fairly heavy?" (J.A. at 202-03.)

The plaintiff also offers Sgt. Ventre's deposition testimony that another applicant for the same job, Chuck Newsom, who was born with only his thumb and his index finger on one hand, was disqualified because of this disability. Ventre was asked in the deposition whether he thought Newsom would have trouble performing the duties of the job: "[Do you think that] because of the disability he had, some people may not respect him as much as another person that didn't have the disability?" Ventre replied, "Right. As cruel as it is, it's a fact of life." (J.A. at 207.) Ventre testified that he doubted that either the plaintiff or Newsom should be given the job because of their disabilities:

> Q:     And then we had Newsom and we also had Todd [the plaintiff], who had physical disabilities, which in your mind may have limited their ability to completely be able to do the job as it was supposed to be done?
>
> A:     Right.

(J.A. at 209.)

Captain Jones, another police hiring official, also interviewed the plaintiff. With regard to plaintiff's medical condition, there were no questions asked in the depositions about what Jones said to plaintiff during the interviewing process. In his affidavit, however, plaintiff stated that Captain Jones asked a number of questions regarding his herniated disc disability and "whether I could do any lifting whatsoever," and that it was clear from the interview that Captain Jones doubted that plaintiff could perform the job due to his back problem. (J.A. at 67-68.)

All of this evidence offered by the plaintiff raises an issue of material fact as to whether Sgt. Ventre and Captain Jones "regarded the plaintiff as disabled," and did not believe he should be hired because he was already receiving a disability pension from the city.

We note that the director of the Cincinnati area office of the United States Equal Employment Opportunity Commission heard the plaintiff's charge against the City and made a determination that the City used the plaintiff's "record of a disability as consideration for hire." He "determined that the evidence obtained during the investigation established a violation of the statute." The office then sought to have the parties engage in the process of mediation and conciliation in order to reach "a just resolution of this matter." (EEOC "determination" of March 30, 2000, J.A. at 162-63.) The record indicates that the City declined to discuss settlement, after which the complaint in this case was filed.

The City also mentions as a defense to this action and as an alternative basis for upholding the District Court's summary judgment the argument that the plaintiff's disability was not the "sole reason" for hiring another person for the firearms instruction job. The City cites *Monette v. Electronic Data Systems Corp.*, 90 F.3d 1173, 1178 (6th Cir. 1996), for the proposition that disability discrimination must be the "sole" basis for the employer's adverse decision in order to violate the Act. We believe that the City's reliance on *Monette* is misplaced. In that case, a discriminatory discharge case, the Court is saying that in such discharge cases a plaintiff may not make out a case of discrimination if, besides discrimination, there were other good and sufficient reasons established to discharge the plaintiff. That is what the Court meant by "sole reason." Judge Martin in his opinion for the Court in *Monette* states that in "direct evidence" cases, like the instant case, the plaintiff must show that the employer "relied" on the disability in making its decision: "In cases in which the plaintiff alleges that he or she is the victim of discriminatory treatment, a plaintiff may attempt to establish unlawful discrimination by introducing direct evidence of discrimination, including evidence that the employer relied upon the plaintiff's disability in making its employment decision . . . ." *Id.* at 1178. "Relied upon" does not mean the "sole reason."

After our Court's opinion in *Monette*, the Supreme Court said that in "regarded"-as-disabled, disparate-treatment cases, the question is "whether there was sufficient evidence from which a jury could conclude that petitioner did make its employment decision based on respondent's status as disabled despite petitioner's proffered explanation." *Raytheon Co. v. Hernandez*, 540 U.S. 44, 53 (2003).

In "direct-evidence," disparate-treatment cases, Judge Martin in *Monette* sets out the procedure to be followed:

> To sum up, if the plaintiff has direct evidence that the employer relied on his or her disability [including so "regarding" the plaintiff] in making an adverse employment decision . . . (1) The plaintiff bears the burden of establishing that he or she [was regarded as] . . . "disabled." (2) The plaintiff bears the burden of establishing that he or she is "otherwise qualified" for the position despite his or her disability: (a) without accommodation from the employer; (b) with an alleged "essential" job requirement eliminated; or (c) with a proposed reasonable accommodation. (3) The employer will bear the burden of proving that a challenged job criterion is essential, and, therefore a business necessity, or that a proposed accommodation will impose an undue hardship upon the employer.

*Id.* at 1186. This is a good statement of the steps in these disability cases. None of these steps have yet been taken in this case. The District Court simply found as a matter of law that the hiring officials did not "regard" plaintiff as disabled, an issue on which there is conflicting proof.

For the reasons stated above, we think that this case should not be decided as a matter of law on the issue of whether the appointing police officials regarded the plaintiff as disabled. There is considerable evidence that two of the appointing officials believed that plaintiff had left the police department due to a disability that would make him unable to perform the duties of a firearms instructor.

Accordingly, the judgment of the District Court is reversed and the case remanded for further proceedings consistent with this opinion.