NOT RECOMMENDED FOR PUBLICATION
File Name: 06a0665n.06
Filed: September 5, 2006

No. 05-3751

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| JEFFREY LEE GENTRY, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| | ) | THE SOUTHERN DISTRICT OF |
| SUMMIT BEHAVIORAL HEALTHCARE, | ) | OHIO |
| | ) | |
| Defendant-Appellee. | ) | |

Before: SILER, CLAY, and McKEAGUE, Circuit Judges.

**SILER**, Circuit Judge. Plaintiff Jeffrey Lee Gentry appeals the district court's grant of summary judgment dismissing his claims under the Americans with Disabilities Act of 1990, Title I and II, 42 U.S.C. § 12101, *et seq*.; the Rehabilitation Act of 1973, 29 U.S.C. § 791 and 42 U.S.C. § 1983; Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000, *et seq*.; and the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2612 and 29 C.F.R. § 825.116, in favor of his employer, Summit Behavioral Healthcare ("Summit"), and individual defendants, Malcolm King, Savio Russo, and B.J. Burgs.[1] Gentry brought suit alleging discrimination and various other claims due to his diagnosis of Tourette's Syndrome. Because Gentry's various claims all fail to create genuine issues of material fact, we AFFIRM.

---

[1]Gentry either does not appeal the summary judgment dismissing individual liability or address such claims on appeal. His claims on appeal only concern Summit, and, thus, the remaining claims are abandoned.

## FACTS

Summit is a facility owned by the State of Ohio, Department of Mental Health ("ODMH"), designed to serve the mentally and physically disabled. King was Director of Nursing for Summit whose responsibilities included oversight of the nursing staff, investigation of employee conduct, and conducting hearings regarding employee discipline and grievances. Russo, manager of registered nurses, issued a written reprimand to Gentry on September 20, 2002, citing a pattern of leave abuse for a series of absences that Gentry claims were necessary due to his FMLA condition. Burgs is a registered nurse who was the primary third-shift supervisor and the person against whom Gentry directs the majority of his complaints.

Gentry began working at Summit in 1993 as a registered nurse, during which time he received good performance reviews by supervisors. It is undisputed that Gentry has been diagnosed with Tourette's Syndrome, which side-effects include "tics" and involuntary muscle contractions. His condition was mild and controlled by medication throughout most of his life. During his initial interview, Gentry revealed that he had Tourette's Syndrome, but did not indicate that any accommodation would be necessary. During his employment, he worked predominately third shift where his functions included completing patient documentation and departmental paperwork and assuring the safety of his assigned unit, which was unit six. In August 1999, Gentry applied for but did not receive a promotion to a supervisory position. Instead, Burgs was promoted to nursing supervisor and became Gentry's supervisor.

In July 2000, Burgs rated Gentry "below expectation" during his annual review in the areas of "problem solving/decision making" and "communication." Gentry complained of his performance evaluation to several individuals employed by the ODMH. In September 2000, Jo Anne Sessions became Gentry's supervisor.

In May 2001, employee Linda Higginbotham filed a charge of discrimination based on her Appalachian ancestry with the Ohio Civil Rights Commission ("OCRC"). Gentry accompanied her during some parts of this process. Burgs was aware that Higginbotham had filed the charge. In June 2001, Gentry sent a letter to Liz Banks, requesting information regarding the existence of an anti-discrimination policy. Banks responded that Gentry should adhere to the chain of command to address his questions and concerns first to his immediate supervisor.

Gentry obtained FMLA certification of his Tourette's Syndrome condition, including the necessity of intermittent leave in October 2001. On October 11, 2001, he filed a charge of discrimination with OCRC and with the Equal Employment Opportunity Commission ("EEOC") against Summit and the other named defendants, claiming that he was being discriminated against and retaliated against due to his Tourette's Syndrome. He accused Burgs, Russo, and King of harassing him. In January 2002, he filed an amended affidavit stating that he was being discriminated against and retaliated against for assisting and supporting Higginbotham in her claims.

In September 2002, he received a letter of reprimand for a "pattern of abuse" of sick leave. He continued to use FMLA leave after receiving the letter. He received approval for extended disability leave in October 2002, and he has not returned to work at Summit since. Gentry was never demoted from his position as a nurse with Summit.

No. 05-3751
*Gentry v. Summit*

This court reviews the district court's grant of summary judgment *de novo*. *Lautermilch v. Findlay City Sch.*, 314 F.3d 271, 274 (6th Cir. 2003).

JURISDICTION

As an arm of the state, Summit is immune under the Eleventh Amendment from claims brought under Title I of the ADA. *See Board of Trustees of the University of Alabama v. Garrett*, 531 U.S. 356, 374 (2001). Thus, Gentry's claims that are barred by the Eleventh Amendment should have been dismissed by the district court without prejudice. *See Dillon-Barber v. Regents of the University of Michigan*, 51 F. App'x 946, 949 (6th Cir. 2002). However, states do not have Eleventh Amendment immunity against private suits for relief under § 504 of the Rehabilitation Act. *See Nihiser v. Ohio E.P.A.*, 269 F.3d 626, 628 (6th Cir. 2001). Therefore, we can review the merits of Gentry's hostile-work environment claim.

Likewise, the self-care FMLA claim should be dismissed without prejudice for lack of jurisdiction. *See Touvell v. Ohio Dep't of Mental Retardation and Dev. Disabilities*, 422 F.3d 392, 400 (6th Cir. 2005).

ANALYSIS

**1.    Hostile-Work Environment Claim**

Gentry claims that he was subjected to a hostile-work environment on account of his disability, in violation of both the ADA and the Rehabilitation Act. To prevail on this claim, he must

- 4 -

prove the following: (a) he was a member of the protective class, that is, he was disabled; (b) he

was subjected to unwelcomed harassment; (c) the harassment was based on his disability; (d) the

harassment had the effect of unreasonably interfering with his work performance by creating an

intimidating, hostile or offensive work environment; and (e) the existence of liability on the part of

Summit. *See Hafford v. Seidner*, 183 F.3d 506, 512 (6th Cir. 1999).

Gentry concedes that Tourette's Syndrome does not substantially limit his major life

activities, but he contends that his superiors at Summit treated him as though "he was limited in the

major life activity of performing manual tasks." He proffers affidavit evidence of other employees

discussing his tics and movements, including an affidavit from James Hindsman alleging that Burgs

stated that Gentry's condition is not safe and that he should not be working for the state. He

generally alleges through co-workers' affidavits and depositions that his supervisors considered him

disabled.[2] Thus, the only issue we are asked to resolve is whether there is sufficient evidence to

create a genuine issue of material fact as to whether Gentry was disabled or perceived to be disabled

due to Tourette's Syndrome.

A disability under the ADA is "'a physical or mental impairment that substantially limits .

. . the major life activities of such individual,' or as 'being regarded as having such an impairment'

by the employer." *Todd v. City of Cincinnati*, 436 F.3d 635, 636 (6th Cir. 2006) (citing 42 U.S.C.

---

[2] His brief mischaracterizes the district court's factual findings, when in fact, there were no findings, but rather statements of Gentry's allegations against Burgs. Furthermore, he improperly states that the district court found that King retaliated against Gentry in several respects, highlighting what was just the court's restatement of his allegation of retaliation. Gentry continues to assert as a district court finding that Russo retaliated against Gentry.

§ 12102(2)). Major life activities are "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(I); *see also* 45 C.F.R. § 84.3(j)(2)(ii).

> There are two ways to demonstrate that an employer "regarded" an employee as disabled:
>
> (1) an employer must mistakenly believe that a person has a physical impairment that substantially limits one or more major life activities, or (2) an employer mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities. In both cases, it is necessary that the employer entertain misperceptions about the individual-it must believe either that one has a substantially limiting impairment that one does not have or that one has a substantially limiting impairment when, in fact, the impairment is not so limiting.[3]

*Moorer v. Baptist Mem'l Health Care Sys.*, 398 F.3d 469, 479 (6th Cir. 2005) (citing *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 489 (1999)).

Gentry argues that he is regarded as disabled in his ability to perform certain job-related tasks. "[T]o be regarded as substantially limited in the major life activity of working, one must be

---

[3]The ADA regulations define "substantially limits" as:

> (1) unable to perform a major life activity that the average person in the general population can perform; or (2) significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

29 C.F.R. § 1630.2(j)(1). The Supreme Court held that "significantly limits" requires a showing of considerable limitation or one that limits a major life activity "to a large degree." *Sutton*, 527 U.S. at 491 (1999).

regarded as precluded from more than a particular job." *Murphy v. United Parcel Serv.*, 527 U.S. 516, 523 (1999). Gentry was required to show that Summit regarded him as unable to work in a broad class of jobs or a broad range of jobs in various classes. *Baptist Mem'l*, 398 F.3d at 481.

Gentry asserts vicarious liability for the behavior and comments of Burgs, including a performance review where Burgs asked that Gentry print his handwriting so it would be legible and where Burgs told employee Yvette Key that she believed Gentry could not perform the "cardex" requirement because of his tics.[4] He claims that he was left alone on unit six with dangerous patients, below the required number of nurses and that he was singled out by denying him permission to use the conference room when other nurses were granted permission.

In Gentry's affidavit he stated that "[w]hen Burgs started harassing me, my tics became worse but I was always able to perform the essential functions of the job." The remaining portions of his affidavit allege that his condition required "more time to shave, more time to dress and take a shower than other persons in my family. . . in order to get ready for work, I would take at least an hour." He stated that he need to go to the bathroom for about five minutes so he could release his Tourette-related tics, but that this never occurred when he was giving injections. He claims that as he was harassed at Summit his tics became worse and he stopped going to public places. Finally, he stated,

---

[4] Finally, the affidavit of Hindsman states that Burgs said that "Jeff's condition of Tourettes was unsafe and that he should not be working for the State of Ohio." He contends that after Burgs became his supervisor, she "mimicked" his uncontrollable jerking movements. Priscilla Myerson's affidavit stated that Burgs commented "can you imagine what a patient might think if he saw Gentry coming into [sic] give him a shot? The patient might think that Jeff is having a seizure and he would be scared straight." Affidavits from Jamie Todd and Ellie Gates also reflect that Burgs expressed concern about Gentry's administering shots to patients.

"I also fell at least once in a public place and after my tics became bad, I was uncomfortable going out to eat or just in general public."

### A. Major Life Activity of Performing Manual Tasks

In *Toyota Motor Mfg., Ky., Inc., v. Williams*, the Supreme Court differentiated between the major life activity of performing manual tasks and the major life activity of working. 534 U.S. 184, 200 (2002). The Court held that the inability to perform job-related activities due to carpal tunnel syndrome did not raise a genuine issue as to whether the plaintiff could perform manual tasks and that it was error to "focus[] on the [the claimant's] inability to perform manual tasks associated only with her job." *Id.* "[T]he manual tasks unique to any particular job are not necessarily important parts of most people's lives. As a result, occupation-specific tasks may have only limited relevance to the manual task inquiry." *Id.* at 201. We instead look to "whether the claimant is unable to perform the variety of tasks central to most people's daily lives, not whether the claimant is unable to perform the tasks associated with her specific job." *Id.* at 200-01. The plaintiff's impairment in *Williams* "caused her to avoid sweeping, to quit dancing, to occasionally seek help dressing, and to reduce how often she plays with her children, gardens, and drives long distances . . . these changes in her life did not amount to such severe restrictions in the activities that are of central importance to most people's daily lives that they establish a manual task disability as a matter of law." *Id.* at 202.

Gentry fails to demonstrate that his supervisors believed he was unable to perform manual tasks in his daily life, and not just that they believed he was unable to perform certain nursing duties.

Simply put, giving injections and satisfying the cardex procedures are not part of "the variety of tasks central to most people's daily lives." *Id.* at 200.

The Supreme Court also explained that the major life activity of performing a manual task is not substantially limited simply because an employee's physical or psychological impairment prevents him from performing a particular job. *See id. at 200-02; see also E.E.O.C. v. Daimler Chrysler Corp.,* 111 Fed. Appx. 394, 399 (6th Cir. 2004) (unpublished) ("[T]he inquiry must focus on the effect of the impairment on the individual's daily life, not on its effect on the individual ability to perform a specific job.").

Gentry only alleges that he was tested as to his ability to administer injections and the legibility of his penmanship. Burgs complained about Gentry's penmanship and requested that he print so his writing could be understood. He does not allege that he was unable to perform the remaining requirements of his job as required. Therefore, the district court did not err in finding that Gentry did not establish that he was "regarded as" having a disability. There is no indication that Gentry's supervisors were aware of any other problems related to Tourette's Syndrome prior to the lawsuit. Thus, his difficulty with, *inter alia*, speaking, walking, bathing, participating in team sports, or extra time required to prepare for work, are not considered as part of Gentry's "regarded as" claim. Finally, Gentry fails to show that his supervisors regarded his "tics" as being so severe or constant that they regarded him as disabled.

**B. The Major Life Activity of Work**

Second, the evidence Gentry offers fails as a matter of law to show that he is unable to work in a broad class of jobs or a broad range of jobs in various classes. *See Baptist Mem'l*, 398 F.3d at 481. He must present some evidence that Summit regarded him as unable to perform a broad range or class of jobs, meaning that it perceived him as unable to perform the same general type of work in the same geographic area. *See Henderson v. Ardco, Inc.*, 247 F.3d 645, 652, 653 n. 5, 654 (6th Cir. 2001) (noting in ADA "regarded as" case that it would be plaintiff's burden at trial to prove that she was perceived as "substantially impaired" in her ability to perform other employment suitable to her age, education and experience and available in her geographic area).

We find no genuine issue of material fact as to whether Gentry's supervisors regarded him as disabled as to performing manual tasks or performing the activity of work. As such, he fails to establish a prima facie case, so we need not address his claims of hostile work environment.[5]

## 2. Retaliation Under Title VII

Gentry also argues that Summit retaliated against him by constructively discharging him. He asserts that he lost wages and suffered from post traumatic stress disorder due to the actions of Summit employees. Title VII, 42 U.S.C. § 2000e-3(a) makes it an unlawful employment practice for an employer to discriminate against an employee because the employee has opposed an employment practice made unlawful by the subchapter or "because the employee has made a charge,

---

[5]Gentry's claim fails because he does not present a genuine issue of fact as to "'a physical or mental impairment that substantially limits . . . the major life activities of such individual,' or as 'being regarded as having such an impairment' by the employer." *Todd v. City of Cincinnati*, 436 F.3d 635, 636 (6th Cir. 2006). Thus, the inquiry stops here.

testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under that subchapter.

He asserts that he engaged in protected activity when he supported co-worker Higginbotham in filing her EEOC charge; filed his own EEOC charge in 2001; and accompanied witnesses Nancy Jewell and Sandy Hockmeyer when they were interviewed by the OCRC in 2002. Because of this he claims he was harassed to the point that he had to go on long-term disability leave thereby being constructively discharged.

Gentry must satisfy the following four elements to make out a prima facie case of retaliation for exercising rights protected by Title VII: (1) he engaged in legally protected activity; (2) Summit knew about Gentry's exercise of this right; (3) Summit took a materially adverse action against Gentry; and (4) the protected activity and the adverse action are causally connected. *Burlington N. & Santa Fe Ry. Co. v. White,* 126 S.Ct. 2405, 2414-15 (2006); *Gribcheck v. Runyon*, 245 F.3d 547, 550 (6th Cir. 2001). We also apply the *McDonnell Douglas* burden-shifting analysis to claims of retaliation. *See Wrenn v. Gould*, 808 F.2d 492, 500 (6th Cir. 1987).

Gentry must meet the initial burden of establishing a prima facie case. *See Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000). The burden then shifts to Summit to provide a legitimate, non-discriminatory reason for its conduct. *Carter v. Univ. of Toledo*, 349 F.3d 269, 273-74 (6th Cir. 2003). Finally, Gentry must show that the proffered explanation by Summit, if any, was a pretext for its retaliatory action. *Id.*

Gentry fails to demonstrate the causal relationship between a protected activity and the adverse action. The district court found that Gentry failed to present a prima facie case of retaliation. The dispositive factor the court found lacking was a connection between the adverse action and the protected activity. A plaintiff is required to establish a causal connection and produce sufficient evidence to create an inference that the "adverse action would not have been taken had the plaintiff not filed a discriminatory action." *Nguyen,* 229 F.3d at 563. Causation can be inferred from circumstantial evidence, *id.*, but to withstand summary judgment, causation must be shown by evidence "sufficient to raise the inference that protected activity was the likely reason for the adverse action," *Zanders v. Nat'l R.R. Passengers Corp.*, 898 F.2d 1127, 1135 (6th Cir. 1990) (internal quotes omitted).

We affirm the decision of the district court because Gentry has not shown a connection between his protected activity and the alleged retaliation. We agree with the district court's finding that several of the adverse acts occurred prior to the protected activity. Gentry does not attempt to address causation in his briefs. Instead he focused on whether there was sufficient evidence to find that he suffered an adverse action and whether the harassment amounted to a constructive discharge. Because he fails to demonstrate a connection between the protected activity and any allegedly retaliatory conduct, we affirm summary judgment.

**3. Family Medical Leave Act**

As mentioned previously, we have no jurisdiction over these self-care FMLA claims. Therefore, we will not discuss that issue. With regard to Gentry's claim that he was entitled to

FMLA leave to care for his mother, his amended complaint provided no notice that he believed he was entitled to leave on the basis of his mother's arthritis. Indeed, the only person in the complaint alleged to have experienced a serious health condition is Gentry. "The sole basis for entitlement to FMLA leave pled in [Plaintiff's] interference claim was *his* alleged serious health condition." *Hubert v. St. Mary's Health Care Sys. Inc..,* 439 F.3d 1286, 1297 (11th Cir. 2006) (emphasis in original) (citing 29 U.S.C. § 2612(a)(1)(D)). Thus, the subsequent assertion of an additional, separate statutory basis for entitlement to leave (caring for a parent's serious health condition) effects a fundamental change in the nature of Gentry's interference claim. *See* 29 U.S.C. § 2612(a)(1)(C). Having proceeded through discovery without amending (or seeking to amend) his complaint to reflect that fundamental change, Gentry is not permitted to raise it in the midst of summary judgment. *Hurlbert*, 439 F.3d at 1296-97.

Moreover, the FMLA authorizes leave "[i]n order to care for the . . . parent, of the employee, if such . . . parent has a serious health condition." 29 U.S.C. § 2612(a)(1)(C). Gentry has not shown either that he was "needed to care for" his mother on the disputed day or that his activities in caring for her because of her arthritis constituted FMLA-qualifying care. *See Overley v. Covenant Transport, Inc.*, 2006 WL 1133292, at *6 (6th Cir. Apr. 27, 2006).

We REMAND the self-care FMLA claim and the Title I ADA claim to the district court for dismissal without prejudice for lack of jurisdiction and AFFIRM summary judgment on all other claims.

**CLAY, Circuit Judge, concurring in part and dissenting in part.** Although I concur in the judgment reached by the majority with respect to Plaintiff's FMLA and retaliation claims, I do not join in its analysis of the retaliation claims in view of the majority's failure to analyze each retaliation claim separately. Additionally, I write separately to express my belief that Plaintiff has offered sufficient evidence to permit a reasonable jury to conclude that he was disabled within the meaning of the Rehabilitation Act and subjected to a hostile work environment on account of his disability. I would therefore reverse summary judgment on Plaintiff's hostile work environment claim and permit the jury to render judgment in the instant case.

## I.

A person is disabled within the meaning of the Rehabilitation Act if he or she (1) has a "physical or mental impairment" that "substantially limits" a "major life activity," (2) is regarded as having an impairment that "substantially limits" a "major life activity," or (3) has a record of such an impairment. *Mahon v. Crowell*, 295 F.3d 585, 589 n.2 (6th Cir. 2002). Both "work" and the "performance of manual tasks" constitute major life activities and one is considered "substantially limited" in his or her ability to work or perform manual tasks, respectively, if he or she is unable to work in a broad class of jobs or perform a variety of tasks central to most people's daily lives. *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 200-02 (2002); *Sutton v. United Airline*, 527 U.S. 471, 491 (1999); *Moorer v. Baptist Mem'l Healthcare Sys.*, 398 F.3d 469, 480 (6th Cir. 2005). The relevant class of jobs is determined with reference to an individual's skills and geographic location. *Sutton*, 527 U.S. at 491.

In the instant case, Plaintiff does not contend that he is actually impaired but that his supervisor, Burgs, regarded him as substantially impaired in his ability to work and perform manual tasks due to his Tourette's Syndrome. As evidence of Burgs' perceptions, Plaintiff offers affidavits indicating that Burgs believed that Tourette's Syndrome rendered Plaintiff unable to write legibly, give patient injections, and work the "cardex" filing system, activities which are necessary to nursing jobs and constitute manual tasks. Specifically, Burgs rated Plaintiff poorly on his communication skills in his yearly job evaluation because she considered his handwriting illegible, informed Plaintiff's co-worker, Eleanor Gates, that she "wouldn't want Jeff Gentry giving [her] a shot doing all of that shaking," (J.A. at 167), and blamed Plaintiff for the disorganized state of the cardex. Additionally, Plaintiff has offered affidavit evidence that Burgs informed other nurses that Plaintiff was not fit to be a nurse, believed that patients were scared of Plaintiff because of his tics, and required other nurses to check Plaintiff's work to insure that it was properly completed.

According to the majority, the evidence described above is insufficient to create any genuine issue of material fact as to whether Gentry was disabled because it does not demonstrate that Burgs believed Plaintiff was excluded from a broad class of jobs, as opposed to his particular job, or unable to perform a variety of tasks central to most people's daily lives, as opposed to specific work related tasks. In reaching this conclusion, however, the majority ignores a line of case law in this Circuit which permits a jury to infer that an employer regards an employee as unable to perform a broad class of jobs from evidence that an employer regards an employee as unfit for his or her particular

job. *Moorer,* 398 F.3d at 480; *Henderson v. Ardco*, 247 F.3d 645, 654 (6th Cir. 2001). As this Court

explained in *Moorer*:

> [P]roving that an employee is regarded as disabled in the major life activity of working takes a Plaintiff to the farthest reaches of the ADA and that this question is embedded almost entirely in the employer's subjective state of mind. This task is extraordinarily difficult because it is safe to assume employers do not regularly consider the panoply of other jobs their employees could perform, and certainly do not often create direct evidence of such considerations.

398 F.3d at 481. Accordingly, this Court concluded that the best evidence of whether an employer

regards an employee as unable to perform a broad class of jobs is often evidence that the employer

regarded the employee as unable to perform his or her specific job. *Id.* at 494. This inference is

eminently logical inasmuch as an employer's belief that an employee cannot perform his or her

specific job necessarily indicates that an employer must also believe that the employee is unable to

preform any similar job. *See id.* ("The fact that Baptist believed that Moorer's alcoholism made him

unable to perform his hospital administrator job, which required a broad range of managerial skills,

permits the reasonable inference that Baptist believed that Moorer's alcoholism rendered him

incapable of performing a substantial number of managerial jobs.") By analogy, this case law also

permits a jury to infer that an employer regards an employee as unable to perform a variety of manual

tasks central to most people's daily lives from evidence that an employer regards the employee as

unable to perform work-related tasks.

The inference this Court recognized in *Moorer* renders summary judgment inappropriate in

the instant case. There is no question that Burgs believed Plaintiff was unable to perform his job as

nurse because of his tics. The evidence discussed above establishes that Burgs believed that Plaintiff could not give injections, work with patients, or communicate adequately to perform his job as a nurse. These skills are necessary to all nursing jobs, as well as many other jobs in the health care industry. Furthermore, the ability to communicate and work with people is essential to almost every job in existence. Inasmuch as Burgs' belief that Plaintiff was unable to write legibly and frightened people implicates Plaintiff's ability to communicate and work with people more generally, evidence of such beliefs also supports the conclusion that Burgs regarded Plaintiff as unable to perform a broad class of jobs involving communication skills.

Similarly, the inference recognized in *Moorer* would allow a reasonable jury to conclude that Burgs regarded Plaintiff as unable to perform a variety of manual tasks central to most people's daily lives. Although giving injections, writing legibly, and organizing a cardex are job related tasks that are not central to most people's daily lives, a juror could easily infer from Burgs' perception of Plaintiff's ability to perform these tasks that Burg also regarded Plaintiff as substantially impaired in his ability to perform other manual tasks that are central to most people's daily lives. For example, if Burgs believed that Plaintiff's tics were sufficiently severe such that Plaintiff was unable to hold a pen or needle in a steady manner, Burg likely also believed that Plaintiff's tics were so severe that they made him unable to steer his car properly, place items in or take items out of the oven, and brush his teeth. All of these tasks require Plaintiff to hold an object in a steady manner without making jerking motions. Furthermore, all of these are central to most people's daily lives.

By granting Defendants' motion for summary judgment on this issue, the district court improperly decided an issue of fact that should have been decided by the jury.

**III.**

Not only has Plaintiff offered sufficient evidence to allow a reasonable jury to find that he was disabled within the meaning of the Rehabilitation Act, he has also offered sufficient evidence to allow a reasonable jury to conclude that Burgs subjected him to a hostile work environment because of his disability. Plaintiff alleged in affidavit form that Burgs subjected him to the following adverse treatment on account of his tics:

1)      gave him a below expectations performance evaluation;

2)      understaffed his patient units;

3)      prohibited him from using the conference room, while allowing other nurses to use the conference room;

4)      made derogatory comments to him, including comments about his tics;

5)      made derogatory comments about his tics to other staff, which comments were then relayed to him;

6)      ordered other staff to stay away from him; and

7)      required other nurses to check his work.

Affidavits of Summit employees Blanche Brown, Linda Higginbothom, Marquita Adkins, Evette Key, Eleanor Gates, Priscilla Myerson, Nancy Jewell, and James Hindsman support Plaintiff's

allegations. According to all of these employees, Burgs treated Plaintiff much worse than any other employee. She also instructed other employees to stay away from Plaintiff and treated them differently when they did not. Furthermore, the record contains substantial direct evidence that Burgs' treatment of Plaintiff was due to his Tourette's Syndrome, including the following statements from the affidavits of Higginbothom, Adkins, Key, and Myerson, respectively:

1)  "'[Stay] away from Jeff Gentry. His kind is not welcome here. I will tell you right now that I have been watching him and he is going down. It is only a matter of time, you don't want to be around when it happens.'" (J.A. at 158);

2)  "'I bet he scares the patients with those [tics].'" (J.A. at 161);

3)  "B.J. Burgs has said that Jeff Gentry shouldn't be a nurse because he has that Tourette's disease, and has said many times that she is going to get him wrote up for anything she can to get rid of them. . . . [and that she] hates every time she has to sit there and watch him tic." (J.A. at 166); and

4)  "Savio said to B.J. Burgs . . . 'When we go to the deposition we should sit down and give Jeff the finger,' and they both proceeded to imitate Jeff's uncontrollable movements, with their middle finger flipping the bird sign. They both began to laugh and make fun of Jeff's uncontrollable jerking movements. B.J. Burgs said, 'Can you imagine what a patient might think, if he saw Jeff coming in to give him a shot? The patient might think that Jeff is having a seizure, and the patient would be scared straight.'" (J.A. at 169.)

Burgs' treatment of Plaintiff caused Plaintiff's tics to worsen and eventually caused Plaintiff to take long-term disability.

In light of the extensive evidence of Burgs' abusive conduct, summary judgment on Plaintiff's hostile work environment claim was not proper. Workplace harassment rises to the level

of a hostile work environment where the harassment is "sufficiently severe or pervasive to alter the conditions of a [the victim's] employment and create an abusive environment." *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 67 (1986). Severity is analyzed through a two-pronged approach: first, the atmosphere must be such that a reasonable person would find it abusive; and second, the plaintiff must subjectively perceive the environment to be abusive. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17 9, 21-22 (1993). In assessing the severity of workplace harassment, courts look to the totality of the circumstances, including whether: (1) "whether the [harassment ]is physically threatening or humiliating, or a mere offensive utterance"; (2) "whether  it unreasonably interferes with an employee's work performance"; and (3) "the effect on the employee's psychological well-being." *See id.* at 23. "No single factor is required" in order to establish a hostile work environment. *Id.*

Plaintiff's evidence is sufficient to satisfy both prongs of the severity analysis. First, a reasonable person would almost certainly find this atmosphere abusive. Burgs' treatment of Plaintiff was not limited to "mere utterances" but included active attempts to humiliate and isolate Plaintiff. Burgs not only made derogatory remarks about Plaintiff's tics but also informed Plaintiff's co-workers that Plaintiff was incompetent, had them check his work, and instructed them to stay away from Plaintiff. Furthermore, Burgs may have intentionally interfered with Plaintiff's work performance by understaffing his unit and constantly requiring him to attend meetings while on duty. Second, Plaintiff very clearly found the atmosphere abusive. Plaintiff suffers from depression, which, according to Plaintiff's doctors, was caused by the work environment at Summit. The work

environment at Summit caused Plaintiff to take long-term disability. Accordingly, Plaintiff has

offered sufficient evidence of a hostile work environment and summary judgment was not proper.

## III.

## CONCLUSION

For the foregoing reasons, I would reverse the district court's grant of summary judgment on

Plaintiff's hostile work environment claim.