SILER, Circuit Judge.
Plaintiff Jeffrey Lee Gentry appeals the district court’s grant of summary judgment dismissing his claims under the Americans with Disabilities Act of 1990, Title I and II, 42 U.S.C. § 12101, et seq.; the Rehabilitation Act of 1973, 29 U.S.C. § 791 and 42 U.S.C. § 1983; Title VII of the Civil Rights Act of 1964 (“Title VII”), 42 U.S.C. § 2000, et seq.; and the Family Medical Leave Act (“FMLA”), 29 U.S.C. § 2612 and 29 C.F.R. § 825.116, in favor of his employer, Summit Behavioral Healthcare (“Summit”), and individual defendants, Malcolm King, Savio Russo, and B.J. Burgs.[1] Gentry brought suit alleging discrimination and various other claims due to his diagnosis of Tourette’s Syndrome. Because Gentry’s various claims all fail to create genuine issues of material fact, we AFFIRM.
Facts
Summit is a facility owned by the State of Ohio, Department of Mental Health (“ODMH”), designed to serve the mentally and physically disabled. King was Director of Nursing for Summit whose responsibilities included oversight of the nursing staff, investigation of employee conduct, and conducting hearings regarding employee discipline and grievances. Russo, manager of registered nurses, issued a written reprimand to Gentry on September 20, 2002, citing a pattern of leave abuse for a series of absences that Gentry claims were necessary due to his FMLA condition. Burgs is a registered nurse who was the primary third-shift supervisor and the person against whom Gentry directs the majority of his complaints.
Gentry began working at Summit in 1993 as a registered nurse, during which time he received good performance reviews by supervisors. It is undisputed that Gentry has been diagnosed with Tourette’s Syndrome, which side-effects include “tics” and involuntary muscle contractions. His condition was mild and controlled by medication throughout most of his life. During his initial interview, Gentry revealed that he had Tourette’s Syndrome, but did not indicate that any accommodation would be necessary. During his employment, he worked predominately third shift where his functions included completing patient documentation and departmental paperwork and assuring the safety of his assigned unit, which was unit six. In August 1999, Gentry applied for but did not receive a promotion to a supervisory position. Instead, Burgs was promoted to nursing supervisor and became Gentry’s supervisor.
In July 2000, Burgs rated Gentry “below expectation” during his annual review in *437 the areas of “problem solving/decision making” and “communication.” Gentry complained of his performance evaluation to several individuals employed by the ODMH. In September 2000, Jo Anne Sessions became Gentry’s supervisor.
In May 2001, employee Linda Higginbotham filed a charge of discrimination based on her Appalachian ancestry with the Ohio Civil Rights Commission (“OCRC”). Gentry accompanied her during some parts of this process. Burgs was aware that Higginbotham had filed the charge. In June 2001, Gentry sent a letter to Liz Banks, requesting information regarding the existence of an antidiscrimination policy. Banks responded that Gentry should adhere to the chain of command to address his questions and concerns first to his immediate supervisor.
Gentry obtained FMLA certification of his Tourette’s Syndrome condition, including the necessity of intermittent leave in October 2001. On October 11, 2001, he filed a charge of discrimination with OCRC and with the Equal Employment Opportunity Commission (“EEOC”) against Summit and the other named defendants, claiming that he was being discriminated against and retaliated against due to his Tourette’s Syndrome. He accused Burgs, Russo, and King of harassing him. In January 2002, he filed an amended affidavit stating that he was being discriminated against and retaliated against for assisting and supporting Higginbotham in her claims.
In September 2002, he received a letter of reprimand for a “pattern of abuse” of sick leave. He continued to use FMLA leave after receiving the letter. He received approval for extended disability leave in October 2002, and he has not returned to work at Summit since. Gentry was never demoted from his position as a nurse with Summit.
Standard of Review
This court reviews the district court’s grant of summary judgment de novo. Lautermilch v. Findlay City Sch., 314 F.3d 271, 274 (6th Cir.2003).
Jurisdiction
As an arm of the state, Summit is immune under the Eleventh Amendment from claims brought under Title I of the ADA. See Board of Trustees of the University of Alabama v. Garrett, 531 U.S. 356, 374, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001). Thus, Gentry’s claims that are barred by the Eleventh Amendment should have been dismissed by the district court without prejudice. See Dillon-Barber v. Regents of the University of Michigan, 51 Fed.Appx. 946, 949 (6th Cir.2002). However, states do not have Eleventh Amendment immunity against private suits for relief under § 504 of the Rehabilitation Act. See Nihiser v. Ohio E.P.A., 269 F.3d 626, 628 (6th Cir.2001). Therefore, we can review the merits of Gentry’s hostile-work environment claim.
Likewise, the self-care FMLA claim should be dismissed without prejudice for lack of jurisdiction. See Touvell v. Ohio Dep’t of Mental Retardation and Dev. Disabilities, 422 F.3d 392, 400 (6th Cir.2005).
Analysis
1. Hostile-Work Environment Claim
Gentry claims that he was subjected to a hostile-work environment on account of his disability, in violation of both the ADA and the Rehabilitation Act. To prevail on this claim, he must prove the following: (a) he was a member of the protective class, that is, he was disabled; (b) he was subjected to unwelcomed harassment; (c) the harassment was based on his disability; (d) the harassment had *438 the effect of unreasonably interfering with his work performance by creating an intimidating, hostile or offensive work environment; and (e) the existence of liability on the part of Summit. See Hafford v. Seidner, 183 F.3d 506, 512 (6th Cir.1999).
Gentry concedes that Tourette’s Syndrome does not substantially limit his major life activities, but he contends that his superiors at Summit treated him as though “he was limited in the major life activity of performing manual tasks.” He proffers affidavit evidence of other employees discussing his tics and movements, including an affidavit from James Hindsman alleging that Burgs stated that Gentry’s condition is not safe and that he should not be working for the state. He generally alleges through co-workers’ affidavits and depositions that his supervisors considered him disabled.[2] Thus, the only issue we are asked to resolve is whether there is sufficient evidence to create a genuine issue of material fact as to whether Gentry was disabled or perceived to be disabled due to Tourette’s Syndrome.
A disability under the ADA is “ ‘a physical or mental impairment that substantially limits ... the major life activities of such individual,’ or as ‘being regarded as having such an impairment’ by the employer.” Todd v. City of Cincinnati, 436 F.3d 635, 636 (6th Cir.2006) (citing 42 U.S.C. § 12102(2)). Major life activities are “functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working.” 29 C.F.R. § 1630.2(1); see also 45 C.F.R. § 84.3(j)(2)(ii).
There are two ways to demonstrate that an employer “regarded” an employee as disabled:
(1) an employer must mistakenly believe that a person has a physical impairment that substantially limits one or more major life activities, or (2) an employer mistakenly believes that an actual, non-limiting impairment substantially limits one or more major life activities. In both cases, it is necessary that the employer entertain misperceptions about the individual-it must believe either that one has a substantially limiting impairment that one does not have or that one has a substantially limiting impairment when, in fact, the impairment is not so limiting.[3]
Moorer v. Baptist Mem’l Health Care Sys., 398 F.3d 469, 479 (6th Cir.2005) (citing Sutton v. United Air Lines, Inc., 527 U.S. 471, 489, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999)).
Gentry argues that he is regarded as disabled in his ability to perform certain *439 job-related tasks. “[T]o be regarded as substantially limited in the major life activity of working, one must be regarded as precluded from more than a particular job.” Murphy v. United Parcel Serv., 527 U.S. 516, 523, 119 S.Ct. 2133, 144 L.Ed.2d 484 (1999). Gentry was required to show that Summit regarded him as unable to work in a broad class of jobs or a broad range of jobs in various classes. Baptist Mem’l, 398 F.3d at 481.
Gentry asserts vicarious liability for the behavior and comments of Burgs, including a performance review where Burgs asked that Gentry print his handwriting so it would be legible and where Burgs told employee Yvette Key that she believed Gentry could not perform the “cardex” requirement because of his tics.[4] He claims that he was left alone on unit six with dangerous patients, below the required number of nurses and that he was singled out by denying him permission to use the conference room when other nurses were granted permission.
In Gentry’s affidavit he stated that “[wjhen Burgs started harassing me, my tics became worse but I was always able to perform the essential functions of the job.” The remaining portions of his affidavit allege that his condition required “more time to shave, more time to dress and take a shower than other persons in my family ... in order to get ready for work, I would take at least an hour.” He stated that he need to go to the bathroom for about five minutes so he could release his Touretterelated tics, but that this never occurred when he was giving injections. He claims that as he was harassed at Summit his tics became worse and he stopped going to public places. Finally, he stated, “I also fell at least once in a public place and after my tics became bad, I was uncomfortable going out to eat or just in general public.”
A. Major Life Activity of Performing Manual Tasks
In Toyota Motor Mfg., Ky., Inc. v. Williams, the Supreme Court differentiated between the major life activity of performing manual tasks and the major life activity of working. 534 U.S. 184, 200, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002). The Court held that the inability to perform job-related activities due to carpal tunnel syndrome did not raise a genuine issue as to whether the plaintiff could perform manual tasks and that it was error to “focus[ ] on the [the claimant’s] inability to perform manual tasks associated only with her job.” Id. “[T]he manual tasks unique to any particular job are not necessarily important parts of most people’s lives. As a result, occupation-specific tasks may have only limited relevance to the manual task inquiry.” Id. at 201, 122 S.Ct. 681. We instead look to “whether the claimant is unable to perform the variety of tasks central to most people’s daily lives, not whether the claimant is unable to perform the tasks associated with her specific job.” Id. at 200-01, 122 S.Ct. 681. The plaintiffs impairment in Williams “caused her to avoid sweeping, to quit dancing, to occasionally seek help dressing, and to reduce how often she plays with her children, gardens, and drives long distances ... *440 these changes in her life did not amount to such severe restrictions in the activities that are of central importance to most people’s daily fives that they establish a manual task disability as a matter of law.” Id. at 202, 122 S.Ct. 681.
Gentry fails to demonstrate that his supervisors believed he was unable to perform manual tasks in his daily fife, and not just that they believed he was unable to perform certain nursing duties. Simply put, giving injections and satisfying the cardex procedures are not part of “the variety of tasks central to most people’s daily fives.” Id. at 200, 122 S.Ct. 681.
The Supreme Court also explained that the major fife activity of performing a manual task is not substantially limited simply because an employee’s physical or psychological impairment prevents him from performing a particular job. See id. at 200-02, 122 S.Ct. 681; see also E.E.O.C. v. DaimlerChrysler Corp., 111 Fed.Appx. 394, 399 (6th Cir.2004) (unpublished) (“[T]he inquiry must focus on the effect of the impairment on the individual’s daily fife, not on its effect on the individual ability to perform a specific job.”).
Gentry only alleges that he was tested as to his ability to administer injections and the legibility of his penmanship. Burgs complained about Gentry’s penmanship and requested that he print so his writing could be understood. He does not allege that he was unable to perform the remaining requirements of his job as required. Therefore, the district court did not err in finding that Gentry did not establish that he was “regarded as” having a disability. There is no indication that Gentry’s supervisors were aware of any other problems related to Tourette’s Syndrome prior to the lawsuit. Thus, his difficulty with, inter alia, speaking, walking, bathing, participating in team sports, or extra time required to prepare for work, are not considered as part of Gentry’s “regarded as” claim. Finally, Gentry fails to show that his supervisors regarded his “tics” as being so severe or constant that they regarded him as disabled.
B. The Major Life Activity of Work
Second, the evidence Gentry offers fails as a matter of law to show that he is unable to work in a broad class of jobs or a broad range of jobs in various classes. See Baptist Mem’l, 398 F.3d at 481. He must present some evidence that Summit regarded him as unable to perform a broad range or class of jobs, meaning that it perceived him as unable to perform the same general type of work in the same geographic area. See Henderson v. Ardco, Inc., 247 F.3d 645, 652, 653 n. 5, 654 (6th Cir.2001) (noting in ADA “regarded as” case that it would be plaintiffs burden at trial to prove that she was perceived as “substantially impaired” in her ability to perform other employment suitable to her age, education and experience and available in her geographic area).
We find no genuine issue of material fact as to whether Gentry’s supervisors regarded him as disabled as to performing manual tasks or performing the activity of work. As such, he fails to establish a prima facie case, so we need not address his claims of hostile work environment.[5]
2. Retaliation Under Title VII
Gentry also argues that Summit retaliated against him by constructively *441 discharging him. He asserts that he lost wages and suffered from post traumatic stress disorder due to the actions of Summit employees. Title VII, 42 U.S.C. § 2000e-3(a) makes it an unlawful employment practice for an employer to discriminate against an employee because the employee has opposed an employment practice made unlawful by the subchapter or “because the employee has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing” under that subchapter.
He asserts that he engaged in protected activity when he supported co-worker Higginbotham in filing her EEOC charge; filed his own EEOC charge in 2001; and accompanied witnesses Nancy Jewell and Sandy Hockmeyer when they were interviewed by the OCRC in 2002. Because of this he claims he was harassed to the point that he had to go on long-term disability leave thereby being constructively discharged.
Gentry must satisfy the following four elements to make out a prima facie case of retaliation for exercising rights protected by Title VII:(1) he engaged in legally protected activity; (2) Summit knew about Gentry’s exercise of this right; (3) Summit took a materially adverse action against Gentry; and (4) the protected activity and the adverse action are causally connected. Burlington N. & Santa Fe Ry. Co. v. White, — U.S. —, 126 S.Ct. 2405, 2414-15, 165 L.Ed.2d 345 (2006); Gribcheck v. Runyon, 245 F.3d 547, 550 (6th Cir.2001). We also apply the McDonnell Douglas burden-shifting analysis to claims of retaliation. See Wrenn v. Gould, 808 F.2d 493, 500 (6th Cir.1987).
Gentry must meet the initial burden of establishing a prima facie case. See Nguyen v. City of Cleveland, 229 F.3d 559, 563 (6th Cir.2000). The burden then shifts to Summit to provide a legitimate, non-discriminatory reason for its conduct. Carter v. Univ. of Toledo, 349 F.3d 269, 273-74 (6th Cir.2003). Finally, Gentry must show that the proffered explanation by Summit, if any, was a pretext for its retaliatory action. Id.
Gentry fails to demonstrate the causal relationship between a protected activity and the adverse action. The district court found that Gentry failed to present a prima facie case of retaliation. The dispositive factor the court found lacking was a connection between the adverse action and the protected activity. A plaintiff is required to establish a causal connection and produce sufficient evidence to create an inference that the “adverse action would not have been taken had the plaintiff not filed a discriminatory action.” Nguyen, 229 F.3d at 563. Causation can be inferred from circumstantial evidence, id., but to withstand summary judgment, causation must be shown by evidence “sufficient to raise the inference that protected activity was the likely reason for the adverse action,” Zanders v. Nat’l R.R. Passenger Corp., 898 F.2d 1127, 1135 (6th Cir.1990) (internal quotes omitted).
We affirm the decision of the district court because Gentry has not shown a connection between his protected activity and the alleged retaliation. We agree with the district court’s finding that several of the adverse acts occurred prior to the protected activity. Gentry does not attempt to address causation in his briefs. Instead he focused on whether there was sufficient evidence to find that he suffered an adverse action and whether the harassment amounted to a constructive discharge. Because he fails to demonstrate a connection between the protected activity and any allegedly retaliatory conduct, we affirm summary judgment.
*442 3. Family Medical Leave Act
As mentioned previously, we have no jurisdiction over these self-care FMLA claims. Therefore, we will not discuss that issue. With regard to Gentry’s claim that he was entitled to FMLA leave to care for his mother, his amended complaint provided no notice that he believed he was entitled to leave on the basis of his mother’s arthritis. Indeed, the only person in the complaint alleged to have experienced a serious health condition is Gentry. “The sole basis for entitlement to FMLA leave pled in [Plaintiffs] interference claim was his alleged serious health condition.” Hurlbert v. St. Mary’s Health Care Sys. Inc., 439 F.3d 1286, 1297 (11th Cir.2006) (emphasis in original) (citing 29 U.S.C. § 2612(a)(1)(D)). Thus, the subsequent assertion of an additional, separate statutory basis for entitlement to leave (caring for a parent’s serious health condition) effects a fundamental change in the nature of Gentry’s interference claim. See 29 U.S.C. § 2612(a)(1)(C). Having proceeded through discovery without amending (or seeking to amend) his complaint to reflect that fundamental change, Gentry is not permitted to raise it in the midst of summary judgment. Hurlbert, 439 F.3d at 1296-97.
Moreover, the FMLA authorizes leave “[i]n order to care for the ... parent, of the employee, if such ... parent has a serious health condition.” 29 U.S.C. § 2612(a)(1)(C). Gentry has not shown either that he was “needed to care for” his mother on the disputed day or that his activities in caring for her because of her arthritis constituted FMLA-qualifying care. See Overley v. Covenant Transport, Inc., 178 Fed.Appx. 488, 494-95 (6th Cir.2006).
We REMAND the self-care FMLA claim and the Title I ADA claim to the district court for dismissal without prejudice for lack of jurisdiction and AFFIRM summary judgment on all other claims.

. Gentry either does not appeal the summary judgment dismissing individual liability or address such claims on appeal. His claims on appeal only concern Summit, and, thus, the remaining claims are abandoned.

. His brief mischaracterizes the district court’s factual findings, when in fact, there were no findings, but rather statements of Gentry’s allegations against Burgs. Furthermore, he improperly states that the district court found that King retaliated against Gentry in several respects, highlighting what was just the court’s restatement of his allegation of retaliation. Gentry continues to assert as a district court finding that Russo retaliated against Gentry.

. The ADA regulations define “substantially limits” as:
(1) unable to perform a major life activity that the average person in the general population can perform; or (2) significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.
29 C.F.R. § 1630.2(j)(1). The Supreme Court held that "significantly limits” requires a showing of considerable limitation or one that limits a major life activity "to a large degree.” Sutton, 527 U.S. at 491, 119 S.Ct. 2139 (1999).

. Finally, the affidavit of Hindsman states that Burgs said that "Jeffs condition of Tourettes was unsafe and that he should not be working for the State of Ohio.” He contends that after Burgs became his supervisor, she “mimicked” his uncontrollable jerking movements. Priscilla Myerson’s affidavit stated that Burgs commented "can you imagine what a patient might think if he saw Gentry coming into [sic] give him a shot? The patient might think that Jeff is having a seizure and he would be scared straight.” Affidavits from Jamie Todd and Elbe Gates also reflect that Burgs expressed concern about Gentry’s administering shots to patients.

. Gentry’s claim fails because he does not present a genuine issue of fact as to " ‘a physical or mental impairment that substantially limits ... the major life activities of such individual,’ or as 'being regarded as having such an impairment’ by the employer.” Todd v. City of Cincinnati, 436 F.3d 635, 636 (6th Cir.2006). Thus, the inquiry stops here.