*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 12a0014p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

—————————————

GWENDOLYN DONALD,

        *Plaintiff-Appellant,*

    *v.*

SYBRA, INCORPORATED, dba Arby's,

        *Defendant-Appellee.*

No. 10-2153

———

Appeal from the United States District Court
for the Eastern District of Michigan at Bay City.
No. 09-12252—Thomas L. Ludington, District Judge.

Decided and Filed: January 17, 2012

Before: MARTIN, SUHRHEINRICH, and COLE, Circuit Judges.

—————————————

## COUNSEL

**ON BRIEF:** Mandel I. Allweil, HURLBURT, TSIROS & ALLWEIL P.C., Saginaw, Michigan, for Appellant. E. Jason Blankenship, McDONALD HOPKINS PLC, Bloomfield Hills, Michigan, Douglas B. Schnee, McDONALD HOPKINS LLC, Cleveland, Ohio, for Appellee.

—————————————

## OPINION

—————————————

COLE, Circuit Judge. Gwendolyn Donald worked for Sybra LLC ("Sybra") at its Arby's restaurants for over two years as an assistant manager. During this period, Donald suffered a number of health problems, forcing her to miss a substantial amount of work. In February of 2008, Sybra terminated Donald when it suspected that Donald entered customer orders improperly in order to steal cash from her register. Donald sued Sybra, alleging various theories of discrimination and retaliation. The district court granted summary judgment in favor of Sybra, which Donald now appeals. We AFFIRM.

1

## I.  BACKGROUND

Sybra hired Donald in late 2005 as an assistant manager at its Arby's restaurant on Holland Avenue in Saginaw, Michigan.  Shortly thereafter, Donald began experiencing a number of serious health problems that required her to take leave from her position.  In 2006, she missed a week of work for gallbladder surgery, and in 2007 she missed approximately eight weeks of work to receive treatment for ovarian cysts and renal stones.  Although the record is unclear as to whether the 2006 absence was under the Family and Medical Leave Act ("FMLA"), there is no dispute that the 2007 absence was.

Donald returned from her 2007 treatment on September 15, 2007, and was subsequently transferred to a different Saginaw store, this time on State Street.  There, Donald worked under Kyle Plum, the store manager, Margo Houston-Barocko, the district partner and Plum's supervisor, and Eric Ballance, a senior director of operations and Houston-Barocko's supervisor.  Ballance visited the State Street store only a few times a year, though Houston-Barocko was there as often as twice per week.  Donald alleges that while working next to each other in the store, Houston-Barocko, cognizant of Donald's health problems, said that Donald "should be disabled" like Houston-Barocko's husband.  Donald does not remember when this conversation took place, though she remembers that it occurred sometime between October 2007 and January 2008.  Houston-Barocko denies making the statement.

On February 14, 2008, Kyle Plum, Donald's supervisor, examined a number of receipts from Donald's drive-in window drawer showing irregularities in how customers were charged.  The receipts showed that orders were taken at full price, customers were given a full price total, but that the orders were then changed to a discounted price.  Plum stated that he discovered that Donald's drawer was $4.00 or $5.00 short.  After notifying his supervisors, Plum donned a headset to listen in on Donald's orders over the next few days.  After comparing the orders Donald took to the figures entered into her register, Plum suspected that Donald improperly discounted the orders and pocketed the difference.  Plum shared his information with Houston-Barocko.

Donald received treatment for ongoing pain and renal stones on her regularly scheduled days off on February 25 and 26, 2008. The treatment caused Donald to experience extreme pain. On February 26, Donald called Plum to notify him that she would not be able to return to work until February 29, but provided neither formal written notice nor a request for FMLA leave. Upon her return on February 29, Plum, Houston-Barocko, and Ballance confronted Donald about the shortage in her drawer and their investigation. Donald denied all allegations of theft, and refused to sign a written form acknowledging the theft. Her employment was then terminated, though Sybra did not object to her receipt of unemployment compensation.

After her termination, Donald filed a complaint against Sybra on the company's grievance hotline. A company representative contacted Donald and, in addition to providing three weeks of paid leave, offered her employment at one of the Detroit stores. Donald declined the offer. Donald then filed a complaint with the EEOC and Michigan Department of Civil Rights, which appears to have been unsuccessful.

On June 11, 2009, Donald filed a complaint in the district court, alleging that Sybra's termination of her employment violated her civil rights. Specifically, Donald alleged that Sybra fired her because of her serious medical conditions, and that such an action violates the FMLA, the Americans with Disabilities Act ("ADA"), and Michigan's Persons with Disabilities Civil Rights Act ("PWDCRA"). On May 28, 2010, Sybra moved for summary judgment, which the district court granted on August 11, 2010.

The district court noted that while there are "substantial questions" concerning whether Donald established a prima facie case for FMLA interference and retaliation, it was unnecessary to discuss those issues because Donald failed to demonstrate that Sybra's justification for her termination was pretextual. The district court also denied relief on the ADA and PWDCRA claims, finding that there was "insufficient evidence connecting the alleged disability to the decision to end her employment . . . ." Donald filed a timely notice of appeal.

## II.  ANALYSIS

### A.  *Standard of Review*

We review the district court's grant of summary judgment de novo.  *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 894-95 (6th Cir. 2004).  Summary judgment is proper when there is no genuine issue of material fact and the moving party, Sybra, is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  Sybra bears the initial burden of demonstrating the absence of genuine issues of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Sybra may satisfy this burden by offering affirmative evidence that negates an element of Donald's claim or, as it attempts to do here, by pointing to an absence of evidence to support the non-moving party's claim.  If Sybra satisfies its burden, Donald must then set forth the specific facts showing that there is a genuine issue for trial.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256-57 (1986).

In evaluating the evidence, we draw all reasonable inferences in favor of Donald. *Blackmore*, 390 F.3d at 895 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  A mere scintilla of evidence in support of Donald's position will be insufficient for her claim to survive  summary judgment.  Rather, there must be enough evidence such that the jury could reasonably find for her.  *Anderson*, 477 U.S. at 251.

### B.  *FMLA Claims*

Donald argues that Sybra's actions give rise to two causes of action under the FMLA.  Donald first argues that because she was terminated while on leave, Sybra violated 29 U.S.C. § 2615(a)(1), which makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise" any FMLA provision. We have previously held that "[i]f an employer takes an employment action based, in whole or in part, on the fact that the employee took FMLA-protected leave, the employer has denied the employee a benefit to which he is entitled."  *Wysong v. Dow Chem. Co.*, 503 F.3d 441, 447 (6th Cir. 2007).  To establish a prima facie case of FMLA interference, Donald must show that

> (1) she was an eligible employee; (2) the defendant was an employer as defined under the FMLA; (3) the employee was entitled to leave under the FMLA; (4) the employee gave the employer notice of her intention to take leave; and (5) the employer denied the employee FMLA benefits to which she was entitled.

*Killian v. Yorozu Auto. Tenn., Inc.*, 454 F.3d 549, 556 (6th Cir. 2006) (citing *Walton v. Ford Motor Co.*, 424 F.3d 481, 485 (6th Cir. 2005)).

Donald next argues that Sybra retaliated against her for taking FMLA leave. The FMLA prohibits an employer from "discharg[ing] or in any other manner discriminat[ing] against any individual for opposing any practice made unlawful by this subchapter." 29 U.S.C. § 2615(a)(2). To establish a prima facie case of FMLA retaliation, Donald must show that

> (1) she was engaged in an activity protected by the FMLA; (2) the employer knew that she was exercising her rights under the FMLA; (3) after learning of the employee's exercise of FMLA rights, the employer took an employment action adverse to her; and (4) there was a causal connection between the protected FMLA activity and the adverse employment action.

*Killian*, 454 F.3d at 556 (citing *Arban v. West Publ'g Corp.*, 345 F.3d 390, 404 (6th Cir. 2003)).

There are disputes as to whether Donald's absence on February 27 and 28 was an exercise of her rights under the FMLA, and whether Donald provided her supervisors with adequate notice of her intention to take leave. This is an intensely factual determination, with a number of regulations governing how employees and employers must act based on the nature of the notice, the nature of the reason for leave, and the exigency of the leave request. *See generally* 29 C.F.R. § 825.302. There is also dispute as to whether there is a causal connection between Donald's leave and her eventual termination.

The district court determined that it need not undertake this factual inquiry, because even if Donald could prove one or both of her prima facie burdens, relief would still be unwarranted. The district court reasoned that under the framework established

in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), a successfully pleaded prima facie case, either for FMLA interference or retaliation, would shift the burden to Sybra to present a legitimate, nondiscriminatory reason for its decision to terminate Donald. If Sybra successfully carries this burden, Donald's claims could survive summary judgment only if she can show that Sybra's stated reasons are a pretext for unlawful discrimination. The district court effectively gave Donald the benefit of the doubt and assumed that she could establish both prima facie cases. This boon notwithstanding, the district court determined that Donald produced insufficient evidence to prove that Sybra's stated reasons, cash register and order irregularities, were pretextual.

There is no doubt that this Court applies the *McDonnell Douglas* burden-shifting framework to FMLA retaliation suits when the plaintiff produces indirect evidence of a causal connection between the protected activity and the adverse employment action. *See Edgar v. JAC Products, Inc.*, 443 F.3d 501, 508 (6th Cir. 2006) ("This court applies the familiar burden-shifting test articulated in [*McDonnell Douglas*] to retaliation claims under the FMLA.") (citations omitted); *Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 315-16 (6th Cir. 2001). Whether *McDonnell Douglas* applies to interference claims is not as clear.

Other courts have made this distinction explicit. *See, e.g.*, *Colburn v. Parker Hannifin/Nichols Portland Div.*, 429 F.3d 325, 332 (1st Cir. 2005) ("[Our] approach to an FMLA claim of retaliation is to permit . . . the ultimate burden of proof [to remain] on the plaintiff . . . . In contrast, employer motive plays no role in a claim for substantive denial of benefits.") (citations omitted); *Diaz v. Fort Wayne Foundry Corp.*, 131 F.3d 711, 712 (7th Cir. 1997) ("Applying rules designed for anti-discrimination laws to statutes creating substantive entitlements is apt to confuse, even if the adaptation is cleverly done."). Our own district courts have called our attention to this dilemma as well. *Schmauch v. Honda of Am. Mfg., Inc.*, 295 F. Supp. 2d 823, 829 (S.D. Ohio 2003) ("The appropriate framework for analysis of claims under § 2615(a)(1) has yet to be settled by the Sixth Circuit.") (citing *Hoge v. Honda of Am. Mfg., Inc.*, 2002 WL 485028,

at *5 (S.D. Ohio Feb. 14, 2002), *rev'd in part*, 384 F.3d 238 (6th Cir. 2004)) ("While the Sixth Circuit has not addressed the analysis to be used for a purported violation of this section, other courts have concluded that the familiar burden-shifting analysis set forth in [*McDonnell Douglas*] does not apply to § 2615(a)(1) claims.")).  The morass is widespread.  *See* Stacy A. Manning, *Application of the Interference and Discrimination Provisions of the FMLA Pursuant to Employment Termination Claims*, 81 Chi.-Kent L. Rev. 741, 748 (2006) ("The inconsistency as to which provision—and therefore which standard—to apply exists between the district and circuit courts, within the individual circuit courts, and among all of the circuit courts.").

In *Grace v. USCAR*, 521 F.3d 655, 670 (6th Cir. 2008), this Court stated that, in an FMLA interference claim, an employer may prove it had a legitimate reason unrelated to the exercise of FMLA rights for terminating the employee.  The Court went on to say that the plaintiff could rebut the employer's reason by showing that the proffered reason had no basis in fact, did not motivate the termination, or was insufficient to warrant the termination.  *Id.*  The Court effectively adopted the *McDonnell Douglas* tripartite test without saying as much.  Because "[r]eported panel opinions are binding on subsequent panels," 6 Cir. R. 206(c), *Grace* requires the conclusion that the district court correctly applied *McDonnell Douglas* to both Donald's interference and retaliation claims.

With this framework in mind, we now turn to the substance of Donald's FMLA claims.  Donald repeatedly calls our attention to the peculiar timing of her termination. Plum discovered the original shortage on February 14, he investigated from February 14 until February 22, yet the termination did not occur until February 29, the day she returned from her medical absence.  Donald fails to mention that February 29 was the first day after the investigation concluded that she worked, and so the first time that a decision made a week earlier could be relayed to her.  Even if this were not the case, the law in this circuit is clear that temporal proximity cannot be the sole basis for finding pretext.  *Skrjanc*, 272 F.3d at 317 ("[T]emporal proximity is insufficient in and of itself to establish that the employer's nondiscriminatory reason for discharging an employee was in fact pretextual.").

Donald further argues that her conversation with Houston-Barocko in late 2007 or early 2008, in which Houston-Barocko allegedly told Donald that she should go on disability "like [Houston-Barocko's] husband," provides an additional inference of discriminatory intent. An understanding of the context of that conversation, which Houston-Barocko insists never occurred, belies Donald's assertion. The conversation allegedly took place while both women worked alongside each other, and as Houston-Barocko and Donald talked about their personal lives. There is no subtext of animus in the comment. To achieve the result that Donald insists upon requires an inference that violates the fundamental rule that "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient" to survive summary judgment. *Anderson*, 477 U.S. at 252.

The remainder of Donald's arguments address the accusation of theft. She vociferously denies the allegation, and argues that there are reasons as to why orders may have irregularities and why her drawer may have been short. This is irrelevant. We have adopted the honest belief rule, reasoning that it is not in the interests of justice for us to wade into an employer's decisionmaking process. *Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 598-99 (6th Cir. 2007). It is instead the employer's belief, and whether it is informed and nondiscriminatory, with which we are concerned. We do not require that the employer arrived at its decision in an "optimal" matter, *id.* at 599, but that it "reasonably relied on the particularized facts that were before it at the time the decision was made." *Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1117 (6th Cir. 2001) (internal quotation marks omitted).

Donald's claims fundamentally rest on the timing of Sybra's decision to terminate her employment, which, we admit, gives us pause. But that alone is not enough, and her other arguments are no more persuasive. Whether Sybra followed its own protocol, or its decision not to prosecute Donald, or even Donald's history of employment, provides neither us, nor a rational juror, with a basis to believe that Sybra's decision was improper. The district court therefore correctly dismissed Donald's FMLA claims.

*C.  ADA & PWDCRA Claims*

Donald asserts that she is disabled within the meaning of the ADA and the PWDCRA, and that this disability motivated Sybra's decision to terminate her.  To state a claim under the ADA, Donald must establish that she is an individual with a disability, that she is otherwise qualified to perform the job requirements, with or without reasonable accommodation, and that Sybra discharged her solely because of the handicap.  *Cotter v. Ajilon Servs., Inc.*, 287 F.3d 593, 598 (6th Cir. 2002) (citing *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1178 (6th Cir. 1996)).  The PWDCRA "substantially mirrors the ADA, and resolution of a plaintiff's ADA claim will generally, though not always, resolve the plaintiff's PWDCRA claim."  *Cotter*, 287 F.3d at 597. Donald provides no argument as to why we should treat the claims separately, nor does our review indicate as much.

To broaden the definition of "disability," Congress passed the ADA Amendments Act of 2008, which became effective on January 1, 2009; we have held that those amendments are not retroactive.  *Milholland v. Sumner Cnty. Bd. of Educ.*, 569 F.3d 562, 565 (6th Cir. 2009).  As Donald's termination occurred in 2008, the prior version of the ADA applies, which defined a "disability" as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2) (2006) (current version at 42 U.S.C. § 12102(1)).

Donald argues that she falls under the third prong of the disability definition, in that Sybra regarded her as having an impairment.  In support of this argument, she puts forth Houston-Barocko's statement that Donald "should be disabled like [Houston-Barocko's] husband because [Donald] had all the medical issues."  But, the prior version of the ADA makes clear that in order to be regarded as disabled, one must be regarded as having an impairment that limits a major life activity.  This difference is technical, but important.

And Donald agrees.  In her brief, she cites to *Todd v. City of Cincinnati*, 436 F.3d 635 (6th Cir. 2006), in which we reversed a grant of summary judgment for the

employer. In *Todd*, a former police officer, who had previously been granted a disability pension, sought employment as a firearms instructor. *Id.* at 636. City officials denied him employment because they had doubts as to whether he could "physically do the demanding work required." *Id.* (internal quotation marks omitted). But, the basis for reversal was not that city officials attached the word "disabled" to the applicant, but their belief that he could not do the work *because* of his disability—that is, that he was impaired from engaging in the major life activity of working. Donald puts forth no such evidence here. At no point does she assert evidence indicating that Houston-Barocko, or any other Sybra employee, thought her unable to engage in a major life activity. Indeed, Donald notes in her brief that everyone at Arby's, including Houston-Barocko, believed that she was a good employee. Under the prior version of the ADA, Donald cannot argue that she was regarded as disabled. We need not determine whether the 2009 amendments would change this outcome.

Examination of the statement's context further guts Donald's argument. Houston-Barocko allegedly made the statement, as previously mentioned, in passing during a personal conversation, at least two months before the termination occurred. It was said in a manner neither to insult Donald nor to imply that she could not accomplish her work, but to assist her. Could animus or discrimination potentially be inferred from such a statement? Perhaps. But we need only consider "*reasonable* inferences," which this is not, in Donald's favor. *Hirsch v. CSX Transp., Inc.*, 656 F.3d 359, 362 (6th Cir. 2011) (citation omitted) (emphasis added).

This isolated remark establishes the whole of Donald's ADA and PWDCRA claims. With nothing more, these claims cannot survive Sybra's motion for summary judgment. The district court correctly dismissed them.

### III. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's judgment.