KAREN NELSON MOORE, Circuit Judge,
joined by Judge Sargus, concurring in part and delivering the opinion of the court with respect to Part V.
We concur in Judge Griffin’s opinion except as to Part V. We believe that Saulter has presented sufficient evidence to establish a genuine dispute whether she would have been terminated had she not taken FMLA leave. Accordingly, we reverse the district court’s grant of summary judgment as to Saulter’s FMLA interference claim and remand for further proceedings.
The FMLA entitles eligible employees to a leave period of up to twelve weeks in a twelvemonth period when “a serious health condition ... makes the employee unable to perform the functions of the position of such employee.” 29 U.S.C. § 2612(a)(1)(D). An employee who takes leave under the FMLA is entitled to return to his previous position or an equivalent position in terms of compensation and benefits. 29 U.S.C. § 2614(a). An employer violates the FMLA when it interferes with the employee’s right either to take FMLA leave or to return to work when leave expires or is no longer necessary. See Arban v. West Publ’g Corp., 345 F.3d 390, 401 (6th Cir.2003). However, “employers are permitted to ‘deny restoration to employment’ if they can ‘show that an employee would not otherwise have been employed at the time reinstatement is requested.’ ” Edgar v. JAC Prods., Inc., 443 F.3d 501, 507 (6th Cir.2006) (quoting 29 C.F.R. § 825.216(a)); see also 29 U.S.C. § 2614(a)(3)(B). Thus, if an employee “would have lost his job or been laid off even if he had not taken FMLA leave,” an employer does not violate the FMLA by terminating that employee while he is on leave. Hoge v. Honda of Am. Mfg., Inc., 384 F.3d 238, 245 (6th Cir.2004).
To prove a claim of FMLA interference, a plaintiff may use the burden-shifting framework articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). See Donald v. Sybra, Inc., 667 F.3d 757, 762 (6th Cir.2012) (applying the McDonnell Douglas analysis when an employer sought to prove that it would have eliminated the employee’s position regardless of whether she took FMLA leave).[1] First, the em *363 ployee must prove a prima facie case of FMLA interference by establishing the following: “(1) he is an eligible employee; (2) the defendant is an employer; (B) the employee was entitled to leave under the FMLA; (4) the employee gave the employer notice of his intention to take leave; and (5) the employer denied the employee FMLA benefits to which he was entitled.” Wysong v. Dow Chem. Co., 503 F.3d 441, 447 (6th Cir.2007) (internal citations and quotation marks omitted). The employer then has the opportunity to justify its actions by articulating a legitimate, non-discriminatory reason for denying FMLA benefits. If the employer can do so, the employee has the burden of demonstrating that the justification proffered by the employer is pretextual.
Saulter alleges that the Detroit Area Agency on Aging (“DAAA”) interfered with her exercise of her FMLA rights by eliminating her position while she was on FMLA leave and refusing to reinstate her or to place her in a comparable position upon her return. R. 1^4 (Am.ComplJ 47) (Page ID #31). The district court concluded that DAAA was entitled to summary judgment on Saulter’s FMLA claim because she failed to “present[] any evidence with which to rebut [DAAA’s] proffered explanation” for eliminating her position, namely the reorganization of many positions within the agency to achieve greater efficiency and economy. R. 18 (D. Ct. Order at 15-16) (Page ID #400-01). Upon reviewing the evidence in the record at summary judgment, we cannot agree with the district court’s conclusion. There is a genuine dispute of material fact regarding whether DAAA’s termination of Saulter “would have occurred regardless of the employee’s request for or taking of FMLA leave,” Arban, 345 F.3d at 401, and whether DAAA’s proffered reason for terminating her is pretextual.[2]
DAAA supervisors gave testimony that supports the conclusion that Saulter’s position would not have been eliminated had she not taken FMLA leave. Saulter’s FMLA leave began on December 29, 2009, but Gale Simmons, a director at DAAA, testified that she did not contemplate eliminating Saulter’s position until after Saul-ter was on leave:
Q. Now, did I understand you earlier to say that there came a point in time when you were convinced or persuaded that a position by Barbara Sa[ul]ter could be eliminated?
A. Yes.
Q. I want you to tell me, first of all, when was the first time you had any discussion about that position, and with whom.
A. ... [W]hat started that line of thinking about that process was it was probably in late January or early February when Mr. Bridgewater stopped by my office and asked how things were *364 going in the nutrition area since we were without a manager. And I replied that it was going along; we were doing okay. And he seemed a little bit surprised by my answer and asked, so if it’s going okay, then what’s Barbara going to do when she gets back.
Q. So this would have been January of 2010?
A. Yes, January, February.
Q. Had you had any discussions with anybody at DAAA or anywhere else about eliminating that position before January of '10?
A. No.
Q. Did you have any belief prior to that time, that there was any reason to eliminate the position before that?
A. No.
Q. Had you ever contemplated eliminating the position before that?
A. No.
R. 18-20 (Simmons Dep. at 18-20) (Page ID # 201) (emphasis added). Simmons also stated that she reached the conclusion that DAAA would not need a registered dietitian on staff only in March 2010, “when we were working with the RD at our vendors, and they were providing the services of an RD.... [This was] when it became apparent that maybe we didn’t need one on staff because this arrangement was working.” Id. at 26 (Page ID # 203).
Further indicating that Saulter’s position may not have been eliminated had she not taken leave is the fact that, as part of DAAA’s efforts to restructure (“Zero-Based Budgeting”), the agency hired an additional assessor to help Saulter because she had more responsibilities than a single employee could reasonably handle. R. 13-19 (Alexander Dep. at 22-23) (Page ID # 188). Additionally, although Grabreck stated in her deposition that she believed the decision to eliminate Saulter’s position was “a business decision ... due to the budget cuts,” R. 15-15 (Grabreck Dep. at 26) (Page ID # 329), Saulter points to the fact that DAAA’s revenues increased by over $600,000 in 2009. R. 15-14 (Revenue/Expense Forecast) (Page ID # 317).
On one view of the facts, DAAA redistributed Saulter’s responsibilities after she began her FMLA leave as part of its ongoing restructuring effort, an action it would have undertaken whether she had taken leave or not. Indeed, “the restructuring of a business [may be] a legitimate, nondiscriminatory reason for terminating an employee who had incidentally taken FMLA leave.” Madry v. Gibraltar Nat’l Corp., 526 Fed.0Appx. 593, 597 (6th Cir.2013) (citing Skrjanc v. Great Lakes Power Serv. Co., 272 F.3d 309, 315 (6th Cir.2001)). However, drawing all inferences in Saul-ter’s favor, the facts could also demonstrate that her responsibilities were redistributed after she took FMLA leave in an effort to cover necessary functions during her absence. On this view of the facts, Saulter had a right to return to her former position or a comparable position: “On return from FMLA leave, ... [a]n employee is entitled to ... reinstatement even if the employee has been replaced or his or her position has been restructured to accommodate the employee’s absence.” 29 C.F.R. § 825.214 (emphasis added). Simmons’s deposition testimony that she did not consider eliminating Saulter’s position until after she had redistributed Saulter’s job functions to accommodate for her absence is the kind of specific evidence necessary to support the inference that Saul-ter’s termination was precipitated by her leave. It is not simply evidence of temporal proximity between the time of leave and the time when Saulter was terminated; rather, it is evidence showing that the person who eliminated Saulter’s position was prompted to do so by the redistrib *365 ution of responsibilities that occurred because of Saulter’s leave. Accordingly, viewing the evidence in the light most favorable to Saulter, we conclude that there is a genuine dispute of material fact regarding whether, had Saulter not taken FMLA leave, DAAA would have redistributed her responsibilities and concluded it was more efficient to eliminate her position. See Breneisen v. Motorola, Inc., 512 F.3d 972, 978 (7th Cir.2008) (holding that plaintiffs denial-of-reinstatement claim survived summary judgment when the evidence suggested that the employer “simply replaced [plaintiff] or restructured his position to accommodate his absence”). Summary judgment on the FMLA claim was not warranted.
Therefore, we REVERSE the district court’s grant of summary judgment in favor of DAAA as to Saulter’s FMLA interference claim and REMAND for further proceedings consistent with this opinion.

. Notwithstanding the fact that Donald is binding on this panel, Donald wrongly concluded, in our view, that the Sixth Circuit applies the McDonnell Douglas burden-shifting framework to interference claims under the FMLA. The regulations implementing the FMLA, which "must be given considerable weight,” Ragsdale v. Wolverine World Wide, Inc., 535 U.S. 81, 86, 122 S.Ct. 1155, 152 L.Ed.2d 167 (2002), place the burden on the employer to demonstrate that it would have terminated the plaintiff regardless of whether she took FMLA leave. See 29 C.F.R. § 825.216(a) ("An employer must be able to show that an employee would not otherwise have been employed at the time reinstatement is requested in order to deny restoration to employment.... An employer -would have the burden of proving that an employee would have been laid off during the FMLA leave period, and, therefore, would not be entitled to restoration.” (emphasis added)). Accordingly, if we were to decide the issue de novo, we would be inclined to conclude, as have the Third, Eighth, Ninth, Tenth, and Eleventh Circuits, *363 that the burden-shifting framework does not apply to FMLA interference claims. See Sommer v. The Vanguard Grp., 461 F.3d 397, 399 (3d Cir.2006) (“Because the FMLA is not about discrimination, a McDonnell Douglas burden-shifting analysis is not required.”); Sanders v. City of Newport, 657 F.3d 772, 780 (9th Cir.2011); Smith v. Diffee Ford-Lincoln-Mercury, Inc., 298 F.3d 955, 963 (10th Cir.2002); Throneberry v. McGehee Desha Cnty. Hosp., 403 F.3d 972, 979-80 (8th Cir.2005); Parris v. Miami Herald Publ'g Co., 216 F.3d 1298, 1301 n. 1 (11th Cir.2000). However, because “[a] panel of this Court cannot overrule the decision of another panel” in a published opinion, we are bound to follow the holding in Donald. Salmi v. Sec’y of Health & Human Servs., 774 F.2d 685, 689 (6th Cir.1985).

. DAAA does not argue that Saulter cannot prove the elements of her prima facie case of FMLA interference.