NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 17a0118n.06

No. 16-1782

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Feb 22, 2017
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| JOHN LEVAINE, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| TOWER AUTOMOTIVE OPERATIONS USA I, | ) | COURT FOR THE EASTERN |
| LLC, | ) | DISTRICT OF MICHIGAN |
| | ) | |
| Defendant-Appellee. | ) | |
| | ) | |

Before: GIBBONS, COOK, and KETHLEDGE, Circuit Judges.

KETHLEDGE, Circuit Judge. John Levaine sued his former employer, Tower Automotive, alleging that Tower violated his rights under the Family Medical Leave Act (FMLA). The district court granted Tower's motion for summary judgment. We affirm.

I.

Levaine started working for Active Tool and Manufacturing (a producer of car parts) in 1997 and joined the United Steelworkers of America Local 2-628. Two years later, Tower bought Active Tool, employed its workers (including Levaine), and entered into a labor agreement with the Union. The agreement set forth Tower's policies against harassment and improper conduct, which themselves prohibited "conduct of any type" that was "contrary to [Tower's] value of treating everyone with dignity and respect." Whether an employee's conduct violated these policies was for Tower to determine "in its sole discretion." Any breach of these

policies could result in immediate termination, and indeed Levaine himself testified that Tower had fired employees for threatening supervisors in violation of the anti-harassment policy.

Under the Family Medical Leave Act, employees can take up to 12 weeks of unpaid leave under certain circumstances. *See* 29 U.S.C. § 2612. Over the years, Levaine requested and Tower granted him FMLA leave on two grounds: to care for his wife's serious medical condition, in 2006 and 2013; and for his own work-related stress and anxiety, in 2013 and 2014. In addition, Tower repeatedly excused Levaine's absences and late arrivals as FMLA leave.

The relevant events here occurred in July and August 2014. Levaine's immediate supervisors then were Steven Kreider, Ryan Paxton and Al Whittredge, who themselves reported to the assembly superintendent, Jeff Muether, who in turn reported to the plant manager, Bill Junge. On July 29, 2014, according to Levaine's deposition testimony, he "probably" started having an anxiety attack when he woke up, and it "probably" continued while he got ready for and commuted to work. Levaine arrived at work "one or two minutes late," and he told Whittredge, the supervisor on duty, that he "was late because of FMLA." Levaine did not explain that he was late because of his anxiety, and Whittredge did not say that Levaine's FMLA request was approved. Levaine wrote "FMLA" on his timecard.

Two days later, Kreider, one of Levaine's supervisors, met with Levaine and his Union steward, Brent Shears, to discuss a disciplinary write-up for Levaine's late arrival on July 29. When Kreider gave Levaine the write-up, Levaine became visibly upset and shouted that Whittredge had excused his late arrival. Kreider then called his supervisor, Muether, who told the group to come with him to find Whittredge.

Muether walked out of the room. Levaine started to leave, but stopped and turned to face Kreider and Shears, 15 to 20 feet away. Levaine held up the write-up and shouted to Kreider,

"I'm going to get you on this." Kreider and Shears ran up to Levaine, and Levaine repeated, "I'm going to get you on this" and said that he was going to file a complaint with the Department of Labor.

Levaine, Kreider and Shears caught up to Muether and told him about the shouting incident. Muether tried to ask Whittredge about Levaine's late arrival two days earlier, but Levaine, still screaming and yelling, would not let Whittredge answer. Muether sent Levaine to another part of the plant to "settle down." Muether then took statements from Kreider and Shears; in separate interviews, each of them independently said Levaine had threatened Kreider. Muether found their statements credible. Muether also thought that Shears had no reason to lie, because he was Levaine's union representative.

Tower suspended Levaine and began to investigate the incident. Eventually Tower determined that Levaine had threatened Kreider in violation of the company's anti-harassment policy. Tower fired Levaine on August 4, 2014, without determining whether he should have been granted FMLA leave for his late arrival on July 29.

Levaine thereafter brought this lawsuit, asserting claims against Tower under the FMLA and Michigan law. Tower moved for summary judgment, which the district court granted as to the FMLA claims. The court dismissed the state-law claims without prejudice. This appeal followed.

II.

We review de novo the district court's grant of summary judgment. *Hamilton Cty. Educ. Ass'n v. Hamilton Cty. Bd. of Educ.*, 822 F.3d 831, 834 (6th Cir. 2016).

A.

Levaine argues that a jury could find that Tower interfered with his rights under the FMLA when it disciplined him for his late arrival, suspended him for threatening his supervisor two days later, and ultimately fired him for that same incident. *See* 29 U.S.C. § 2615(a)(1).

As an initial matter, Levaine must show that he was entitled to FMLA leave for his late arrival and that Tower denied it nonetheless. *See Donald v. Sybra, Inc.*, 667 F.3d 757, 761 (6th Cir. 2012). To be entitled to FMLA leave, an employee must both notify his employer of his need to take leave and state a qualifying reason for leave. *See* 29 C.F.R. § 825.301(b). If the employer lacks sufficient information to determine whether the FMLA applies, the employee must help his employer gather more details. *See id*. § 825.303(b). If the employee fails to do so, and the employer cannot otherwise determine if the request qualifies under the FMLA, then the employer may deny leave. *Id.*

Here, Levaine thought that he was entitled to and had been granted FMLA leave for his late arrival on July 29. But Tower never officially approved his FMLA request for that day. When Levaine objected to the disciplinary write-up two days later, his supervisors tried to gather more details. That investigation conceivably might have led Tower to excuse Levaine's late arrival under the FMLA, but Levaine himself aborted the process when he shouted at his supervisors and prevented Whittredge from answering questions. And Levaine did not otherwise assist with Tower's investigation. Tower thus could have properly denied his leave request, which means Levaine did not establish that he was entitled to FMLA leave. His interference claim therefore fails.

B.

Levaine's remaining claim is that Tower retaliated against him for invoking the FMLA when he arrived late on July 29. 29 U.S.C. § 2615(a)(2); *see generally Donald*, 667 F.3d at 761. To prevail on this claim, Levaine must present evidence that would allow a jury to find that Tower disciplined, suspended, and ultimately fired him "specifically *because* [he] invoked [his] FMLA rights." *Edgar v. JAC Prods., Inc.*, 443 F.3d 501, 508 (6th Cir. 2006) (emphasis in original). If Tower states a legitimate, non-retaliatory reason for firing him, then Levaine must show that the company's stated reason was pretextual. *See Grace v. USCAR*, 521 F.3d 655, 670 (6th Cir. 2008). Here, Tower stated a perfectly valid reason for firing Levaine—that he had threatened a supervisor in violation of company policy. Levaine contends that the short time between his invocation of the FMLA and Tower's decision to suspend and fire him would allow a jury to find that Tower's real reason for these actions was his invocation of the FMLA when he arrived late on July 29. But "temporal proximity cannot be the sole basis for finding pretext." *Donald*, 667 F.3d at 763. Moreover, any inference based on temporal proximity here is negated by the fact that Levaine threatened his supervisor during that same time. Levaine therefore cannot show pretext based on timing. Nor would any of his other arguments about the putative unfairness of his firing allow a jury to find pretext.

\*        \*        \*

The district court's judgment is affirmed.