NOT RECOMMENDED FOR PUBLICATION
File Name: 18a0176n.06

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

Apr 04, 2018
DEBORAH S. HUNT, Clerk

KIM TILLOTSON,                               )
                                             )
    Plaintiff-Appellant,                     )
                                             )
v.                                           )    ON APPEAL FROM THE
                                             )    UNITED STATES DISTRICT
MANITOWOC COMPANY, INC.,                     )    COURT FOR THE EASTERN
                                             )    DISTRICT OF MICHIGAN
    Defendant-Appellee.                      )
                                             )

BEFORE:    ROGERS, McKEAGUE, and WHITE, Circuit Judges.

ROGERS, Circuit Judge.   Kim Tillotson appeals the district court's order granting The Manitowoc Company's motion for summary judgment on Tillotson's claim that he was terminated in retaliation for exercising his rights under the federal Family and Medical Leave Act (FMLA), 29 U.S.C. § 2601–2654.  The company maintains that Tillotson was terminated as part of a company-wide reduction in force ("RIF") because he was the lowest rated employee in his position according to the company's evaluative rubric.  Despite the opportunity for discovery, Tillotson has offered no evidence to establish that the company's reliance on the rubric was pretextual.  Because Tillotson has failed to demonstrate that there is a genuine issue of material fact with respect to whether the company's proffered reason is pretext, the district court properly granted the company's motion for summary judgment.

Delfield Company, LLC, hired Kim Tillotson in 1983. Tillotson initially worked as a customer service representative; in 1993, he became a sales engineer; and in 2003, he became an internal sales manager. In 2008, The Manitowoc Company, Inc., acquired Delfield's parent company, Enodis Corporation, and all its subsidiaries, including Delfield. In 2013, Tillotson became a product sales manager with Delfield, and he held that position until November 2015.

As a product sales manager, Tillotson was responsible for maintaining established customer relationships within specific territories, as well as for generating new business in said territories. Tillotson was based out of Delfield's Michigan offices, but because of the nature of his work, Tillotson often traveled to meet with clients in his assigned territories. Tillotson was initially assigned a territory that encompassed Louisiana, Tennessee, and part of California, which required him to fly approximately two hours to see his clients, with the occasional four-hour flight to California.

Near the end of 2013, Tillotson began visiting the University of Michigan Health System because he suffers from dumping syndrome, which can cause abdominal cramps and diarrhea and can require patients to use the restroom four to eight times per day. Tillotson informed his supervisor, Delfield's Senior Product Sales Manager Bill Hoffman, about his condition. However, Tillotson never requested any modifications of his job duties during this time.

In January 2015, Tim Wilczak replaced Hoffman as Senior Product Sales Manager at Delfield, and the product sales managers' territories were realigned to give Wilczak territory to cover. Wilczak took over the West Coast and part of the Central Midwest. Tillotson became responsible for parts of the Southeast and Midwest, *e.g.* Indiana, Ohio, Georgia, and Tennessee. After the realignment, Tillotson could reach all his clients by plane flights of approximately two hours. However, he still occasionally attended national trade shows in California.

Around the time Wilczak took over as Senior Product Sales Manager, Tillotson began experiencing a flare-up of his symptoms from dumping syndrome. In January 2015, Tillotson approached Kevin Humphreys, a human resources representative with the company, about potentially filing a FMLA leave and/or short-term disability request. Humphreys explained that Tillotson would need to get his condition documented, and that Tillotson could submit his request to Matrix Absence Management, Inc., the company's third-party leave administrator. In early February, Tillotson explained his condition to Wilczak, and notified Wilczak that he was considering requesting FMLA leave.

On February 14, 2015, Tillotson submitted a request for FMLA leave and/or short-term disability to Matrix. Tillotson requested leave from February 26, 2015, until "unknown," presumably within the twelve-week period protected by the FMLA. Tillotson's physician, Dr. Scott Vogel, faxed Matrix Tillotson's Health Care Certification Form on February 17. Dr. Vogel diagnosed Tillotson with "irritable bowel syndrome with spasticity and diarrhea," but he did not provide dates for any necessary leave. Dr. Vogel stated that Tillotson needed a "controlled work environment with ready access to the bathroom/toilet," but Dr. Vogel did not state that Tillotson had any disabling medical conditions or that a period of leave was necessary. The Certification Form also indicated that Tillotson had achieved maximum medical improvement, and that Tillotson's work status was "Regular Work Release."

On February 23, Matrix informed Tillotson that it had received Dr. Vogel's Certification Form, but that Tillotson's request for leave would not be approved because Dr. Vogel had not identified any dates on which Tillotson needed leave, and because Dr. Vogel had explicitly indicated that Tillotson was able to perform all the functions of his job. Matrix formally denied Tillotson's FMLA leave request on February 26, because the leave Certification Form did not

certify Tillotson's requested leave as being related to a serious health condition. Moreover, the Certification Form did not support a level of impairment that would preclude Tillotson from performing the material duties of his job.

Tillotson continued to see Dr. Vogel for his symptoms, and on April 27, 2015, Dr. Vogel made a visit note that stated:

> [Tillotson] should not travel more than 2 hours, and should not exceed 8 days away from home per month. These days away from home should not [exceed] 8 consecutive days. Travel of longer distances should be limited to 3 days per quarter. No prolonged travel or activities of greater than 1 to 2 hours without having a bathroom break.

Tillotson provided the note to Humphreys, who scheduled a meeting with Tillotson and Wilczak in May 2015. During the meeting, all three agreed that the travel restrictions did not require any changes to Tillotson's job duties, because Tillotson was already working within the confines of the restrictions after the sales territories were realigned in early 2015. However, the group discussed that adjustments might need to be made in the future if there were changes in Tillotson's responsibilities or travel needs. Tillotson's job duties and/or travel needs, however, never changed between this meeting and his termination.

When Wilczak told Steve Willoughby, the company's Vice President of Sales Operations, about Tillotson's travel restrictions in late May, early June, of 2015, Willoughby allegedly expressed frustration because the company "can't have a sales guy who can't travel." In early summer 2015, Humphreys heard that the company was considering a reduction in force ("RIF"), and that Tillotson's position was being considered for termination. As part of the company's downsizing process, Humphreys called Trisha Hall, a human resources representative, to let her know about the series of events involving Tillotson. Humphreys explained that Tillotson had provided medical documentation of his dumping syndrome, that

Tillotson had contacted Matrix, and that Tillotson had met with Humphreys and Wilczak to discuss travel accommodations. Hall apparently responded, "You can't have a salesperson that can't travel." But Humphreys clarified that Tillotson was not banned from travel, just that he had certain limitations, and explained that it had been determined that Tillotson did not require any changes to his working conditions.

In November 2015, the company carried out a company-wide RIF, and as part of the RIF, eight of the company's twenty-seven product sales managers were released, including Tillotson. Willoughby was tasked with identifying four of the product sales managers for elimination, and one of the four had to come from the Delfield product line. According to Willoughby:

> [i]n making the RIF decisions . . . , [he] analyzed the employees in terms of skill set, ability, and results across each brand, in order to retain those employees best able to perform the work required to be performed after completion of the RIF. To aid in this determination, [Willoughby] utilized the Company's [product sales manager] "9-Box," which ranked the performance and potential of each [product sales manager] and/or Senior [product sales manager]. The aforementioned 9-Box had been created prior to any decision by the Company to conduct the November 2015 RIF, and specifically during the Company's annual talent assessment process.

Of the four product sales managers at Delfield, Tillotson was ranked the lowest according to the 9-Box, and therefore Willoughby chose Tillotson as the Delfield product sales manager to be terminated.

Tillotson subsequently filed suit, alleging interference and retaliation in violation of the FMLA and age discrimination in violation of the Michigan Elliot-Larson Civil Rights Act. After discovery, the company moved for summary judgment on all of Tillotson's claims, which the district court granted. With respect to Tillotson's claim for FMLA retaliation, the district court held that Tillotson had established a *prima facie* case, but granted the company's motion for

summary judgment because Tillotson had not established an issue of material fact as to whether the company's stated reason for discharging him was pretext. The district court reasoned that Tillotson had failed to produce sufficient evidence from which a juror could reasonably reject the company's reliance on the 9-Box rubric as merely pretextual. Tillotson now appeals, challenging only the district court's grant of summary judgment in favor of the company on Tillotson's FMLA retaliation claim.

But even assuming that Tillotson can demonstrate a *prima facie* case for FMLA retaliation, the company was entitled to summary judgment, because Tillotson has failed show that the company's legitimate, nondiscriminatory reason for terminating him is pretextual. The company rebutted the presumption created by Tillotson's *prima facie* showing by explaining that Tillotson was selected for termination during a company-wide RIF because he was the lowest rated product sales manager at Delfield in terms of performance and potential according to the company's 9-Box rubric for ranking product sales managers. Under the burden shifting framework applicable to FMLA retaliation claims, Tillotson must present sufficient evidence from which a reasonable juror could conclude that the company's reason is pretext, *Bryson v. Regis Corp.*, 498 F.3d 561, 572 (6th Cir. 2007), by showing that the "proffered reason had no basis in fact, did not motivate the termination, or was insufficient to warrant termination," *Donald v. Sybra, Inc.*, 667 F.3d 757, 762 (6th Cir. 2012). But Tillotson has offered no substantive evidence to rebut the company's legitimate reason for terminating him.

Tillotson argues that there is sufficient evidence of pretext to establish an issue of material fact, because the record does not make clear when, exactly, the 9-Box rubric was filled out. However, Tillotson's argument is largely built on a misreading of the record, and even if there is a question as to when the company filled out the 9-Box, that is not sufficient to establish

an issue of fact regarding pretext. Throughout his brief, Tillotson misquotes Willoughby's testimony regarding when the 9-Box was completed, but Willoughby's declaration makes clear that his decisions during the November 2015 RIF were based on the company's 9-Box rubric that "had been [filled out] prior to any decision by the company to conduct the November 2015 RIF, and specifically during the company's annual talent assessment process." [1] Although the record does not specify when the talent assessment process occurred, it is clear that the 9-Box was completed not only prior to Willoughby's decision to terminate Tillotson but also prior to the company's decision to even conduct the November RIF. Tillotson has offered no contrary evidence that the 9-Box was filled out or altered after he exercised his FMLA rights and, although Tillotson asks the court to infer that it was, such an inference is not supported by the record and would be based on pure speculation.

Still, Tillotson argues that the record does not establish when the annual talent assessment process occurred, although the Willoughby declaration states that this was "prior to" the RIF decision. But even if the 9-Box was filled out after the decision to have a RIF, this alone does not indicate discrimination. The company needed some criteria to determine which of the four product sales managers at Delfield would be terminated, and Tillotson presents no basis for a juror to conclude that the 9-Box was altered, misused, or erroneously or unfairly filled in after the company became aware of Tillotson's FMLA leave request.

Instead, Tillotson points to the fact that the 9-Box employs some subjective criteria to evaluate product sales managers, but Tillotson cannot establish pretext simply because some of the component metrics in the company's evaluative rubric are subjective. We have recognized the need to scrutinize evaluations that utilize subjective criteria because of "the problems

---

[1] At oral argument, the parties both agreed that "created" as used in Willoughby's declaration means "filled out," not "developed" or "designed."

inherent in selection procedures which rely solely upon . . . subjective evaluations," *cf. Rowe v. Cleveland Pneumatic Co., Numerical Control, Inc.*, 690 F.2d 88, 93 (6th Cir. 1982), but "a plaintiff can not ultimately prove discrimination merely because his/her employer relied upon highly subjective qualities (i.e. 'drive' or 'enthusiasm') in making an employment decision," *Goosby v. Johnson & Johnson Med., Inc.*, 228 F.3d 313, 321 (3d Cir. 2000). First, the company did not rely *solely* on subjective criteria. Willoughby testified that objective metrics such as "monthly sales targets and feedback from customers and reps" were employed to evaluate a product sales manager's "performance rating" in the 9-Box rubric, and Wilczak testified that performance scores were based largely on objective sales reports. More importantly, however, to the extent the 9-Box utilized subjective criteria to evaluate product sales managers' "future potential," Tillotson has offered no evidence from which a reasonable juror could infer that the company manipulated, abused, or misapplied that criteria to affect Tillotson's ranking.

Tillotson also claims that pretext can be inferred from the fact that "[the company] had no explanation or evidence as to why it evaluated [Tillotson] as 'Medium' in future potential," but Tillotson's argument fails because it misplaces the burden at the pretext stage. "The defendant need not persuade the court that it was actually motivated by the proffered reasons. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981) (citation omitted). At the summary judgment stage, the nonmovant is required "put up or shut up" on the critical issues of his asserted cause of action, *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1989). Indeed, under the burden-shifting framework applicable to FMLA retaliation claims, once the defendant carries its burden to articulate a nondiscriminatory reason for an adverse employment action, "the presumption raised by the prima facie case is rebutted,

and the factual inquiry proceeds to a new level of specificity," and "[t]he plaintiff retains . . . the ultimate burden of persuading the court that []he has been the victim of intentional discrimination." *Burdine*, 450 U.S. at 255–56 (footnote omitted).

Thus, *Tillotson* retains the burden of persuasion to demonstrate pretext, and he "must do more than simply show that there is some metaphysical doubt as to material facts." *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). But Tillotson has offered no evidence to support an inference that the company erroneously rated him "Medium" for future potential or that the Company's evaluation of the other product sales managers at Delfield is unworthy of credence.[2] During discovery, Tillotson was free to depose Willoughby and the other Delfield product sales managers, to request additional documentation regarding the 9-Box, to issue interrogatories regarding the company's methods for determining product sales managers' ratings, and to request performance evaluations for the product sales managers that the company retained. But he did not, and he cannot rely on the court to erroneously shift the burden of persuasion back to the company.

Finally, Tillotson points to Willoughby's and Hall's comments that the company "can't have a sales guy who can't travel," as evidence that the company's reliance on the 9-Box is merely a pretext for FMLA retaliation, but those comments are not probative of FMLA retaliation because they do not relate to Tillotson's FMLA-protected activity. While discriminatory remarks can certainly be probative of pretext, the court must "examine the substance of the discriminatory remarks in determining their relevancy to a plaintiff's claims that an impermissible factor motivated the adverse employment action." *Ercegovich v. Goodyear*

---

[2]Tillotson's 2013 and 2014 year-end evaluations appear to indicate that Tillotson was a good employee, but there is nothing in the record to indicate how other product sales managers scored on their year-end evaluations. Since the 9-Box is designed to be a comparative rubric, Tillotson's old evaluations carry little weight without knowing how they compare to the other Delfield product sales managers.

*Tire & Rubber Co.*, 154 F.3d 344, 355 (6th Cir. 1998). Here, Willoughby's and Hall's comments were directed to Tillotson's request for travel accommodations, not his request for FMLA leave. Tillotson argues that the comments were related to his request for FMLA leave because both related to his medical condition. But Tillotson's request for travel accommodations is not protected conduct under the FMLA because "the FMLA does not appear to have a freestanding reasonable-accommodations provision," *Smith v. City of Niles*, 505 F. App'x 482, 485 (6th Cir. 2012), and "the leave provisions of the [FMLA] are wholly distinct from the reasonable accommodations obligations of employers covered under the [ADA]," 29 C.F.R. § 825.702(a) (alterations in original).

The district court reasoned that Tillotson's request for travel accommodations might fall under the FMLA's protection for "[i]ntermittent leave or reduced leave schedule[s]," s*ee* 29 C.F.R. § 825.202; *see also* 29 U.S.C. § 2612(b). But even if this provision somehow granted a right to accommodations under the FMLA, the facts here do not indicate that Tillotson ever actually attempted to invoke § 825.202's protections. Tillotson never requested leave, intermittent or otherwise, during his meeting with Humphreys and Wilczak. Tillotson also never requested a move from full-time to part-time employment, which is "normally" the type of "reduced leave schedule" protected under § 825.202, *see* 29 C.F.R. § 825.202. Also, when Tillotson informed Humphreys and Wilczak about his travel restrictions, all three agreed that there was no need to reduce or adjust Tillotson's "usual number of working hours per workweek, or hours per workday," 29 C.F.R. § 825.202, because Tillotson's schedule already complied with Dr. Vogel's proposed restrictions. Indeed, even after meeting with Humphreys and Wilczak, Tillotson never sought or received any adjustments to his job duties, travel schedule, or work schedule. Thus, Tillotson's request for travel accommodations is not protected under the

FMLA's provision for leave taken intermittently or on reduced leave schedule, s*ee* 29 U.S.C. § 2612(b); 29 C.F.R. § 825.202, and Willoughby's and Hall's comments do not create an issue of material fact with respect to pretext in the context of this company-wide RIF.

The judgment of the district court is affirmed.