NOT RECOMMENDED FOR PUBLICATION
File Name: 26a0239n.06

No. 25-5793

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
May 28, 2026
KELLY L. STEPHENS, Clerk

RICHARD THISTLETHWAITE,

 Plaintiff-Appellant,

  v.

PACE AIR FREIGHT, INC.,

 Defendant-Appellee.

)
)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF KENTUCKY

OPINION

Before: McKEAGUE, READLER, and BLOOMEKATZ, Circuit Judges.

BLOOMEKATZ, Circuit Judge. Richard Thistlethwaite worked at Pace Air Freight, Inc. from 1999 until he was terminated in 2021. He claims that Pace interfered with and retaliated against his use of Family and Medical Leave Act (FMLA) leave. The district court granted summary judgment to Pace, concluding that even had Thistlethwaite been able to establish a prima facie case for FMLA interference and retaliation, he could not show that Pace's legitimate, non-retaliatory reasons for his termination were pretextual. We agree there is no genuine dispute of material fact with respect to pretext. Accordingly, we affirm.

**BACKGROUND**

Thistlethwaite began working for Pace, a trucking company that transports pharmaceuticals across the Midwest, in 1999. He started as a truck driver, but through a series of promotions, worked his way up to director of operations—the position he held when terminated in 2021. As relevant to this appeal, Thistlethwaite oversaw operations at Pace's Cincinnati and Louisville terminals.

While at Pace, Thistlethwaite took medical leave on multiple occasions. During the first half of 2018, Thistlethwaite took four months of leave. At the end of 2018, and stretching through much of 2019, Thistlethwaite took additional leave for approximately eleven months.

Thistlethwaite took another medical leave in February 2021, the period from which his claims in this case arise. He was on leave for approximately two months. A few days before Thistlethwaite was set to return to work, Pace terminated him. Pace provided two reasons for Thistlethwaite's termination: (1) his failure to provide company management "access to the security camera video records" at the locations he oversaw and (2) his falsification of mileage reports for his trips between the Cincinnati and Louisville terminals. Termination Notice, R. 64-1, PageID 409.

In response to being terminated while on leave, Thistlethwaite sued Pace for FMLA interference and retaliation. After the parties conducted discovery, Pace moved for summary judgment. The district court granted summary judgment to Pace, holding that Thistlethwaite could not show that Pace's proffered reasons for terminating him were pretextual.

Thistlethwaite timely appealed.

**ANALYSIS**

We review a district court's grant of summary judgment de novo. *Seeger v. Cincinnati Bell Tel. Co., LLC*, 681 F.3d 274, 281 (6th Cir. 2012). At the summary judgment stage, the moving party—here, Pace—must show there is no genuine dispute as to any material fact. *See* Fed. R. Civ. P. 56(a). A dispute of material fact is genuine if, based on the evidence, a reasonable jury could decide for Thistlethwaite. *Jackson v. VHS Detroit Receiving Hosp., Inc.*, 814 F.3d 769, 775 (6th Cir. 2016). In evaluating Pace's motion, we construe the evidence and draw all reasonable

inferences in Thistlethwaite's favor. *See King v. Steward Trumbull Mem'l Hosp., Inc.*, 30 F.4th 551, 559 (6th Cir. 2022).

We apply the *McDonnell Douglas* burden shifting framework because Thistlethwaite's FMLA interference and retaliation claims rely on circumstantial evidence. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *see also Donald v. Sybra, Inc.*, 667 F.3d 757, 762 (6th Cir. 2012). Under this framework, Thistlethwaite bears the initial burden of establishing a prima facie case of interference and retaliation. *Donald*, 667 F.3d at 761. If he does so, the burden shifts to Pace to articulate a legitimate, non-retaliatory reason for terminating him. *Id.* And if Pace provides such a reason, the burden shifts back to Thistlethwaite to show that Pace's stated reasons are pretextual. *Id.* at 762.

Because the pretext analysis is dispositive in this case, and applies with equal force to Thistlethwaite's interference and retaliation claims, we skip to the third step of *McDonnell Douglas* (as the district court did). Even assuming Thistlethwaite can establish a prima facie case of interference and retaliation, he has not pointed to evidence that creates a genuine dispute of material fact that Pace's stated reasons for termination were pretextual. A plaintiff can generally show pretext by demonstrating that the proffered reasons have "no basis in fact," "did not actually motivate the employer's action," or "were insufficient to motivate the employer's action." *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009). Ultimately, pretext is a "commonsense inquiry" that asks whether Pace terminated Thistlethwaite "for the stated reason or not?" *Id.* at 400 n.4.

Thistlethwaite argues that neither of Pace's stated reasons for his termination had a basis in fact. Recall that Pace's first reason for termination was Thistlethwaite's failure to provide the security camera passwords. The record conclusively establishes that Thistlethwaite did not provide

the passwords to management, a fact that Thistlethwaite himself does not deny. Thistlethwaite argues, however, that this reason is pretextual because Pace knew he could not comply with the request. He says that he produced "substantial evidence" that the "camera systems were not operational and that passwords were unavailable or had defaulted," meaning that any failure to provide the passwords should not have been treated as insubordination under the circumstances. Appellant's Br. at 16–18.

But Thistlethwaite's inconsistent deposition testimony, and sparse record evidence, is insufficient to create a genuine dispute of fact as to this issue. Thistlethwaite provided several justifications for why he did not provide the passwords for the camera system: During his deposition, Thistlethwaite testified that from "2018 to the time that [he] was terminated [the cameras] did not work," but that "[b]efore that they worked in Cincinnati" even though "Louisville did not have the right cameras." Thistlethwaite Dep., R. 64-2, PageID 467. At another point, when asked explicitly whether the cameras "work[ed] or [did] not work" at the Cincinnati location, he answered, "[n]ot 100 percent." *Id.* As for the Louisville location, Thistlethwaite testified that the "cameras worked, but they weren't at the correct locations." *Id.* at 468. Additionally, Thistlethwaite stated that the Louisville system had a password, but another individual "handled that one down there." *Id.*

The depositions reveal that, by Thistlethwaite's own admission, at least some of the cameras at the Louisville location functioned. However, Thistlethwaite does not explain why, at a minimum, he did not provide the password for that system. Nor does he state with any consistency which cameras at each location did or did not function, the period of time during which the cameras did not function, when the manufacturer's default for the Cincinnati password occurred, or why he did not have access to the Louisville password.

Thistlethwaite's additional evidence is similarly insufficient to create a genuine dispute of material fact as to whether at least some of the cameras were operational. Thistlethwaite points to an email thread from January 25, 2021, several weeks after he was first asked for the passwords, in which he explained to the company's owners that people would be "back to replace the 3 broking [sic] cameras and setup the rest," Email, R. 73-7, PageID 1156, and a quote from September 2018, in which a company provided an estimate for installing a video surveillance system, Quote, R. 73-9, PageID 1165. But Thistlethwaite does not explain how the email referring to 3 broken cameras and the installation quote create a genuine dispute of fact as to whether the approximately 12 to 16 cameras at the Cincinnati location and the approximately 5 or 6 cameras at the Louisville location were all either nonfunctional or otherwise inaccessible. Therefore, on this record, there is no evidence from which a jury could reasonably infer that Pace's first stated reason had no basis in fact.

Next, recall that Pace's second stated reason for termination was Thistlethwaite's falsified mileage reports. Thistlethwaite argues that this reason is pretextual because his reports were not fraudulent. He contends that there was an innocent explanation for why no employee remembered seeing him on particular days: that, on multiple occasions, he "followed a truck (as the security rider) to the terminal and then returned to the terminal he came from without going inside." Appellant's Br. at 9. Tellingly, Thistlethwaite provides no evidence to corroborate this explanation, and his testimony does not state with any specificity how many times he followed a truck without entering the terminal nor the dates on which he did so. Though a plaintiff's testimony may "lack precision," it must be sufficiently "coherent[]" to, on its own, create a dispute of fact. *See Moran v. Al Basit LLC*, 788 F.3d 201, 205 (6th Cir. 2015). Without more, Thistlethwaite's general explanation that on some occasions he did not enter the terminal is not enough to create a

jury question as to whether Pace's stated reason had no basis in fact. And, even assuming Thistlethwaite's proffered justification is true, Pace would still be entitled to summary judgment because Thistlethwaite's refusal to provide the camera passwords was an independent reason for his termination.

Thistlethwaite also argues that Pace's investigation into his mileage was actually motivated by his use of medical leave. But the timing of when Pace commenced its investigation undercuts that. The undisputed record evidence demonstrates that Pace began its investigation in late December 2020 or early January 2021 after Pace grew suspicious of Thistlethwaite's refusal to provide the camera passwords. Thistlethwaite does not contest these facts, which establish the investigation began *before* he requested, and started, leave in February 2021. Thus, the investigation could not have been motivated by Thistlethwaite's subsequent leave.

Additionally, Thistlethwaite makes arguments about the nature of Pace's investigation, its less harsh treatment of another employee, and a statement from the company's owner in 2018—all of which, he contends, prove Pace's animus towards his taking medical leave. But none of these arguments are availing. With respect to the investigation itself, Pace interviewed three employees, including the Louisville terminal's manager, asking whether Thistlethwaite was at the location on "specific dates, like holidays that would have been memorable" "[w]ithin the last three months," and confirmed that he was "never there." Abner Dep., R. 64-9, PageID 893. Given that each location is small, and Thistlethwaite would have interacted with other employees, Pace found those responses sufficient to conclude Thistlethwaite was not present at the location on the days he claimed. This investigation, which, again, commenced before Thistlethwaite's February leave request, does not evince hostility toward FMLA leave. With respect to the comparator employee, Thistlethwaite points to Joe Voigt. Voigt was investigated for time theft but the accusations were

"not validated," so Voigt was ultimately not let go. *Id.* at PageID 863. The investigation into Thistlethwaite, by contrast, corroborated Pace's concerns about his mileage, so Voigt is not a viable comparator. With respect to the company owner's statement in 2018—that Thistlethwaite "f---ed up"—Pace explains that the statement was not made in connection with Thistlethwaite taking leave, but was made after the company discovered Thistlethwaite had committed insurance fraud during his prior leave. Thistlethwaite does not dispute Pace's explanation, so the owner's statement does not provide evidence of pretext.

In sum, Thistlethwaite has not put forth evidence from which a reasonable jury could conclude that Pace terminated him for taking FMLA leave.

## CONCLUSION

We affirm the district court's grant of summary judgment to Pace.